## In re McCORD.

(District Court, S. D. New York. February, 1909.)

BILLS AND NOTES (§ 264*)—ACCOMMODATION INDORSEMENT—LIABILITY OF INDORSERS INTER SESE.

The mere fact that indorsers of a note are accommodation indorsers, and known to each other to be so, is not sufficient to change the general rule of law that prior indorsers are liable in solido to subsequent indorsers who have paid the note; but an express agreement is necessary to render them liable ratably as between themselves.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 612; Dec. Dig. § 264.*]

In the matter of William M. McCord, bankrupt. On review of decision of referee. Order modified.

The following is the opinion of Olney, Referee:

In this proceeding, Leo Oppenheimer, as receiver (now trustee) in bankruptcy of Frank Squier, filed a claim against the estate of William M. McCord, bankrupt. William M. McCord was adjudicated a bankrupt in December, 1907. Thereafter, in January, 1908, Frank Squier was adjudicated a bankrupt, also, in the Southern district of New York. The claim filed by Leo

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Oppenheimer, as receiver, arises by reason of 15 notes and interest thereon, aggregating $39,138.85. The trustee of McCord, bankrupt, moved that the claim of Oppenheimer, as receiver, be expunged in whole or in part. Testimony was taken on the motion, and briefs of counsel submitted.

My conclusion, from the testimony, is that the bankrupt William M. McCord, and the bankrupt Frank Squier, were, with others, accommodation indorsers of the paper in question, and that each knew that the other was such accommodation indorser. Neither McCord nor Squier received any benefit from the said notes. The notes were discounted, and the proceeds of such discount was received by, or used for the benefit of, the Manufacturers' Mercantile Company or the Meers Artificial Leather Company. The first eight notes mentioned in the proof of claim, aggregating, with interest, the sum of $18,638.85, were taken up and paid by Squier before his failure, and are now held by his trustee in bankruptcy. Some of these notes were taken up before the bankruptcy of McCord, and some after the McCord bankruptcy. The remaining seven notes were not taken up by Squier, and are not held by his trustee in bankruptcy.

The trustee contends that Oppenheimer, the trustee of Squier, can only prove on the notes which Squier had taken up prior to McCord's bankruptcy. But it has been settled by decisions of the courts that the holder of a note indorsed by a bankrupt can prove thereon against the bankrupt estate, although the note had not become payable at the date of the bankruptcy, provided the note was duly protested, and the bankrupt notified thereof after the bankruptcy. Re Gerson (D. C.) 5 Am. Bankr. R. 89, 105 Fed. 891; Re Gerson, 6 Am. Bankr. R. 11, 107 Fed. 897, 47 C. C. A. 49. Here all the notes were duly protested, and the indorsers duly notified. The holders of the notes at the time of their protest, therefore, could have proved on the notes. Under subdivision "i," § 57, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560, 561 [U. S. Comp. St. 1901, c. 3443]), upon failure of the holders of the notes to prove thereon against the bankrupt, any other party liable to the holder could prove thereon in the creditor's name. Hence Squier, after he had taken up eight of the notes, had the right to prove thereon against the bankrupt estate, and to his right Oppenheimer, as trustee, succeeded.

The question arises: For what amount can Squier's trustee prove? All the indorsers of the notes were accommodation indorsers, and known to each other so to be. The first note mentioned in the proof was a note of the Meers Artificial Leather Company for $3,406.38, indorsed by McCord, Henry Berg, H. & J. T. Slade, and Squier, and delivered, so indorsed, to the payees, C. H. Pope & Co. in payment for merchandise sold by Pope & Co. to the leather company. Squier paid and took up this note. Then the other accommodation indorsers became liable to pay Squier their pro rata share of said note. Each of the other indorsers was liable in contribution to pay to Squier one-fourth of said note; there being, with Squier, four such accommodation indorsers. This must be so, unless the New York statute, entitled the "Negotiable Instruments Law" (Consol. Laws N. Y. c. 38), has changed the rule of law in that respect.

The counsel for Squier's trustee contends that this statute has changed the rule, and that McCord, and in fact each of the prior indorsers, is liable to Squier's trustee for the whole amount of the note; and the counsel cites sections 55 and 114 of the statute in support of his claim. Section 55 provides that an accommodation party to a negotiable instrument is liable to a holder for value, notwithstanding that such holder, at the time of taking the instrument, knew the accommodation party received no value. The section does not mean that one accommodation indorser is necessarily liable to another accommodation indorser, who takes up the paper, for the full amount of the instrument. The extent of the liability depends upon the agreement among themselves, express or implied, of the several accommodation indorsers. When two or more accommodation indorsers lend their names in order that a third person can borrow money from some other person on the instrument thus indorsed, the implied agreement is that each accommodation indorser shall be liable as between themselves for his proportionate share of the sum mentioned in the instrument. The provision in section 114 that any person who indorses a negotiable instrument before delivery is liable to the parties subsequent to the payee, it seems to me, states what is the presumption, in the

absence of any evidence showing what the facts are as regards the rights and liabilities of the various parties as between themselves. In other words, this section was not intended to change the well-established rule of law that parol evidence is always admissible to show what the true relations of the various parties are in fact. See Witherow v. Slayback, 158 N. Y. 649, 53 N. E. 681, 70 Am. St. Rep. 507, and cases there cited; also Kohn v. Consolidated Butter & Egg Co., 30 Misc. Rep. 725, 63 N. Y. Supp. 265.

I do not think the statute was intended to change this rule of evidence. In the case at bar, Squier, an accommodation indorser, takes up the paper, paying its full amount to the holder. It is contended, under the statute, he can recover the full amount from the next three indorsers. If he can recover the full amount, then the indorser from whom he recovers can recover the full amount from the next prior indorser, and the result would be that the first indorser would have to bear the entire burden, which by the implied agreement all the accommodation indorsers were to share pro rata. There would be no justice in such a result. As to the eight notes first mentioned in the proof of claim, Squier's trustee can prove against McCord's estate for McCord's pro rata share of liability as one of several accommodation indorsers.

With respect to the seven remaining notes mentioned in the proof, the holders thereof have filed proofs thereon herein, with the exception of the note of the Meers Artificial Leather Company, payable to the order of Squier, for the sum of $2.500, payable February 7, 1908, which note was also indorsed by McCord, the bankrupt; Squier and McCord both being accommodation indorsers. Pursuant to section 57, subd. "i," the holder of the note having failed to prove thereon, Squier's trustee has, apparently, the right to prove thereon in the name of the First National Bank of Bound Brook.

An order may be entered in accordance with the foregoing opinion. The attention of the trustee is called to the fact that a great number of notes, aggregating a large amount, of this same general character, have been proved herein by the holders, and that all such proofs should be carefully examined, to see that none of these notes are proved twice.

James, Schell & Elkus (Robert P. Levis and James N. Rosenberg, of counsel), for the motion.

Garvan, Armstrong & Conger (John S. Keith, of counsel), opposed.

HOLT, District Judge. I am not able to concur with the conclusion of the referee in this case in respect to the eight notes which remain in controversy. Seven of those eight notes were made by the Meers Artificial Leather Company, and were indorsed by McCord, the bankrupt, by Frank Squier, and by two or three others; each indorsing for the accommodation of the makers. The other note was made by H. & J. T. Slade, and indorsed by McCord and Squier; each indorsing for the accommodation of the makers. The money received from the discount of these eight notes was paid either to the Meers Artificial Leather Company or to the Manufacturers' Mercantile Company. Neither McCord nor Squier ever obtained any consideration or benefit for his indorsement. On each of these notes McCord's indorsement was prior to that of Squier. At the maturity of these notes, Squier was called upon by the holders to pay them, and did pay them. He subsequently went into bankruptcy, and his trustee in this proceeding has proved for the full amount of the notes against the estate of the bankrupt. The referee has held that McCord, Squier, and the other indorsers were all accommodation indorsers, and that each knew that the others were such, and for that reason he has held substantially that all these accommodation indorsers are sureties as between themselves, and that each is liable only for his proportionate share of the amount

due on the notes. The referee has accordingly reduced the claim of the trustee of Squier from the total amount paid on the notes, for which the claim was filed, to the bankrupt's proportionate share of such amount.

It is undoubtedly well settled that accommodation indorsers can, by agreement among themselves, restrict the liability of each to his proportionate share, or, indeed, make any other arrangement as to their liability to each other which they see fit to make. But it is, of course, fundamental in the law of commercial paper that, in the absence of any such agreement, an indorser who pays a bill or note has recourse against each prior indorser for reimbursement. I do not understand that the mere fact that indorsers are accommodation indorsers, and known to each other to be so, is sufficient, without proof of an express agreement, to change the general rule of law that prior indorsers are liable in solido to subsequent indorsers who have paid a note. There must be, as I understand the rule, a specific agreement, as between the various indorsers, that they shall only be liable ratably. If there is no such agreement, the law fixes their liability in accordance with the order of the names on the paper. McCarty v. Roots, 62 U. S. 432, 16 L. Ed. 162; Easterly v. Barber, 66 N. Y. 433; Kelly v. Burroughs, 102 N. Y. 93, 6 N. E. 109; Egbert v. Hanson, 34 Misc. Rep. 596, 70 N. Y. Supp. 383. Each of these accommodation indorsers indorsed each of these notes in the same order. McCord, the bankrupt, indorsed first, the others next, and Squier last. In the absence of evidence of a specific agreement to the contrary, the order of the indorsements indicates an understanding between the indorsers that Squier, if he paid the notes, was to be entitled to recourse against each of the others, and that McCord, being the first indorser, in substance guaranteed each of the other indorsers against loss. I have read over the evidence, and there is no proof of any specific agreement between the indorsers.

I think, therefore, that under the fundamental principles governing the law of mercantile paper and the express provisions of the Negotiable Instruments Law, §§ 55, 114, 118, Squier's trustee is entitled to prove his claim against the bankrupt's estate for the full amount paid on the eight notes in question.

---

## THE MUIRFIELD.

(District Court, N. D. Florida. November 13, 1909.)

1. SHIPPING (§ 49*)—CONSTRUCTION OF CHARTER PARTY—DISPATCH MONEY.

A provision of a charter party for the allowance to the charterer of dispatch money for lay days saved in loading construed.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 49.*]

2. SHIPPING (§ 50*)—CONSTRUCTION OF CHARTER PARTY—LIABILITY FOR TONNAGE DUES.

Under a provision of a charter party requiring the charterer to pay tonnage dues, he was liable for such dues actually imposed, although based on a resurvey by the customs officers while in port, which gave the vessel an additional tonnage over that shown by her British registry.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 50.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes