JOHN W. WEEKS & another *vs.* FRANK B. PARSONS.

Suffolk. January 19, 1900. — October 16, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Promissory Note — Contribution between Indorsers becoming Co-sureties — Assumpsit — Statute of Frauds — Joint Action — Liability of Director to account for Profit in Purchase and Sale of Assets of Corporation.*

If there is an understanding between the directors of a corporation that they shall indorse certain promissory notes for the benefit of the corporation, and it is also intended and understood that the indorsements are to be joint and not several, the indorsers are, as between themselves, co-sureties. It is not necessary that there shall be a contract in so many words to sign as co-sureties.

It may be shown by parol evidence that as between themselves the relation between successive indorsers of a promissory note is that of co-sureties.

Assumpsit will lie by one surety against another on the contract implied from their relation as co-sureties to recover from him his share of the amount paid in settlement of the common liability ; and even if there is an express agreement between them to contribute, it does not follow that assumpsit will not lie.

The statute of frauds does not apply to an action by one indorser of a promissory note, after he has paid it, to recover contribution from his co-indorser, the indorsements being made with the understanding that they shall be joint and not several.

Two persons, each of whom is jointly liable with another for the amount of a promissory note, may join in one action, after payment of the note by them, to recover

from him his share of the sum so paid; and if one of the plaintiffs dies after action brought, the other may maintain the action for the benefit of himself and the estate of the deceased plaintiff.

If a director of a corporation, who, with other directors, indorses a promissory note made by the corporation with the understanding that the indorsements shall be joint and not several, buys a portion of the assets of the corporation sold by an assignee at public auction and afterwards sells them, it not appearing that the sale by the assignee was not conducted fairly and in good faith, such director is not required to account for the profit, if any, which he may have made by the purchase and sale, in an action by him, after he has paid the note, to recover contribution from a co-indorser.

CONTRACT, by John W. Weeks and John C. Holman. The declaration contained seven counts, each for money paid by the plaintiffs to the defendant's use in taking up, after maturity, seven promissory notes, upon which the plaintiffs, the defendant, and others were accommodation indorsers, and also an eighth count upon an account annexed, for the same causes of action set forth in the other counts. Answer: 1. A general denial. 2. The statute of frauds. Trial in the Superior Court, without a jury, before *Lilley*, J., who reported the case for the determination of this court, in substance as follows.

The plaintiff Holman died since the beginning of the action, and the case was prosecuted by the plaintiff Weeks in his own behalf and in behalf of the estate of Holman.

There was evidence that the Davidson Ventilating Fan Company was a corporation organized under the laws of the State of Maine in 1891, doing business in Boston, of which the plaintiff Weeks was the president. The defendant was the treasurer and general manager, and these two, together with Holman, Frank Q. Browne, and Henry C. Hall, were directors, and held such offices respectively from the organization of the corporation until January 7, 1895, when the defendant resigned the offices of treasurer, director, and general manager; and the others continued in office until the corporation ceased to do business in May, 1895.

In 1892 and 1893, the corporation being in need of funds with which to carry on its business, the plaintiff Weeks, at a meeting of the directors held for the purpose of considering what action should be taken to raise money to carry on the corporation's affairs, at which all were present, stated that he was ready to indorse the corporation's paper jointly with the other directors

for the purpose of raising the necessary funds; and thereafter a note or notes were drawn by the corporation, signed by the defendant in the corporate name, payable to the corporation, indorsed by the five directors and the corporation, and discounted. The proceeds of such notes were placed in the treasury and applied for the use and benefit of the corporation; such note or notes as they became due were renewed in like form and manner, and other notes were given for additional sums from time to time, and the seven notes referred to in the declaration were the last renewals of the notes heretofore mentioned, and all outstanding at the time the corporation was unable to meet its liabilities.

The defendant either prepared such notes and the renewals thereof from time to time, and offered them for signature to the various directors, or instructed his assistants in the corporation's office to prepare such notes and the renewals thereof, and to present them to the directors for signature, which was done; and the signatures of the directors upon the seven notes in question appear on no two notes in the same order of signing, and no direction was ever given by the defendant as treasurer to his assistants as to the order in which the directors should affix their signatures as accommodation indorsers, but his instructions to them were to get the signatures of the directors. The defendant testified that he never heard the plaintiff Weeks make the original proposition, or any other proposition, in relation to the indorsing of the notes, except on some occasions when he himself handed some of the notes to Weeks, indorsed by the other directors; that then Weeks stated to him that he, the defendant, should sign the notes, as the bank required that all the directors should indorse the notes before they could be discounted, and the defendant thereupon indorsed those notes.

The corporation made an assignment for the benefit of its creditors. The seven notes referred to in the declaration were not paid by the corporation at maturity, and were duly protested by the respective holders thereof, and due notice was given to all the indorsers thereon. The notes were paid shortly after maturity by check of Hornblower and Weeks, a copartnership of which the plaintiff Weeks was a member. The plaintiff Holman was then in the employ of Weeks, and the amounts as

paid were charged by the firm to Weeks and Holman in their respective accounts, or were put on a special account for which both the plaintiffs were responsible. Weeks testified as to this point: " I do not know whether or not Holman had provided the money to pay one half the amount of each note before such note was paid, but he provided it then or later to pay one half the notes." The corporation, through an assignee for the benefit of its creditors, paid the plaintiffs a small dividend, but the plaintiffs received no other payment from the corporation or on its account.

At a sale by the assignee at public auction of the assets of the corporation, the plaintiff Weeks bought, or caused to be bought, a portion thereof, and paid for the same with his own money, and afterwards sold the same for $2,500. He testified that he did not know the value of the assets bought by him, and could not describe them, and did not remember what he paid for them; and testified further as follows : " My agent, if you want to put it that way, bought the assets (referring to a portion thereof) at public sale, and they were afterwards sold, and the $2,500 I have received since was on account of the sale of those assets." This had nothing to do with the dividend paid by the assignee, save as the amount which Weeks paid for such portion constituted a part of the fund from which the dividend was paid, and such sum has not been accounted for nor applied on the notes referred to in this action. The directors, Brown and Hall, contributed to the plaintiffs their respective proportions, as claimed by the plaintiffs, of the money paid by them, after the payment of the notes by the latter, but the defendant has never paid any portion of the sum so paid by the plaintiffs.

The defendant objected to the admission of any evidence tending to show an agreement and understanding other than that expressed in the notes which were introduced in evidence; and requested the judge to rule that such testimony was not competent under the declaration, but the judge declined so to rule ; and the defendant excepted.

The defendant requested the judge to rule that as the declaration alleged joint liability by indorsement, while the notes showed only successive and several indorsements, there was a fatal variance, and the plaintiff could not recover; that the

declaration and each count thereof being framed in *indebitatus assumpsit,* this action could not be maintained on evidence showing an express promise, agreement, or understanding between the directors as to their mutual liability, " because where there is a special contract still subsisting, upon which the action might be brought, *indebitatus assumpsit* will not lie, and the cause of action must be set forth in a special count "; and that payment by the plaintiffs, they being prior indorsers, and there being no evidence of any express request by the defendant, would raise no assumpsit as against the defendant so far as he might appear on any of the notes introduced in evidence as a subsequent indorser, and, therefore, on the pleadings and evidence, the plaintiffs could not recover. The judge declined so to rule; and the defendant excepted.

The defendant objected to the admission of the evidence offered to show by parol an agreement or understanding as to indorsing the notes, on the ground that there was an attempt to establish by oral testimony an express promise to answer for the debt, default, or miscarriage of the corporation without any note or memorandum thereof in writing; and asked the judge to rule that the statute of frauds would be a bar to maintaining this action upon parol evidence of such promise, understanding, or agreement. The judge admitted the evidence, declined to give the ruling requested, and ruled that the understanding as to joint liability among the indorsers was not such an agreement as would fall within the statute of frauds; and the defendant excepted.

The defendant also asked the judge to rule that the plaintiffs were not entitled on the pleadings and evidence to maintain this action jointly, and, at the close of the evidence, that the plaintiffs were not entitled to recover in this action; that, assuming the relation of the indorsers to be that of co-sureties, as claimed by the plaintiffs, any profit made out of the assets of the corporation by one must enure to the benefit of all, and a portion of the value of or profit on the assets bought by the plaintiff Weeks must be accounted for in this action for contribution; and that this action could not be maintained, because it did not appear from the evidence how much the plaintiffs have paid more than their proportion or share of the common

debt, assuming the obligation to be joint, nor that the plaintiffs have paid more than upon a fair accounting they can ever be called upon to pay. The judge declined so to rule; and the defendant excepted.

The defendant further requested the judge to make a special finding as to whether or not there was an express contract as to the indorsement of the notes, which the judge declined to do, stating that he found that there was an understanding among the directors by which they were to indorse jointly, and that in his view of the law applicable to the case it was not necessary to show an express agreement; and the defendant excepted.

Upon all the facts the judge found that there was an understanding between all the directors that they indorsed the notes for a common purpose for the benefit of the corporation, in which they were commonly interested, and that it was understood and intended by them that the indorsement was a joint and not a several indorsement; and found that the plaintiffs were entitled to recover from the defendant his proportion of the sum expended by them, with interest.

If the rulings were correct, judgment was to be entered for the plaintiffs on the finding; otherwise, the finding was to be set aside and the case to stand for trial.

*W. O. Kyle*, for the defendant.

*G. A. Blaney*, for the plaintiffs.

MORTON, J. We see no error in the rulings or refusals to rule. The court found that there was an understanding between the directors that they should indorse the notes for the benefit of the corporation, and that it was intended and understood that the indorsements were to be joint and not several. There was evidence warranting this finding, and it follows from it that the indorsers were as between themselves co-sureties. It was not necessary that there should be a contract in so many words to sign as co-sureties. It was sufficient if it appeared, taking all of the circumstances into account, that that was the nature of the liability which as between themselves the parties intended to assume and did assume. *Clapp* v. *Rice*, 13 Gray, 403. *Mansfield* v. *Edwards*, 136 Mass. 15. *Mulcare* v. *Welch*, 160 Mass. 58. *Hagerthy* v. *Phillips*, 83 Maine, 336. *Macdonald* v. *Whitfield*, 8 App. Cas. 733.

We interpret the refusal of the court to find whether there was an express contract as meaning that, as the court in substance ruled, it was not necessary to show an agreement in so many words. In view of the finding as to the intention and understanding of the parties, it is manifest that the defendant was not harmed by the refusal of the court to find that there was not an express agreement, using the word " express " in the sense which we have given to it above. It is too well settled to require any extended citation of authorities that it may be shown by parol evidence that as between themselves the relation between successive indorsers is that of co-sureties. *Clapp* v. *Rice* and *Mansfield* v. *Edwards, ubi supra.* It is also well settled that *indebitatus assumpsit* will lie by one surety against another on the contract implied from their relation as co-sureties to recover from him his share of the amount paid in settlement of the common liability. *Bachelder* v. *Fiske*, 17 Mass. 464. *Mansfield* v. *Edwards, ubi supra.* " The right of contribution does not arise out of any contract or agreement between co-sureties to indemnify each other, but on the principle of equity, which courts of law will enforce, that where two persons are subject to a common burden, it shall be borne equally between them. In such cases the law raises an implied promise from the mutual relation of the parties." *Warner* v. *Morrison*, 3 Allen, 566.

Even if there had been an express agreement to contribute, it would not have followed that *indebitatus assumpsit* would not lie, and therefore the ruling that was asked for to that effect was rightly refused. *Gibbs* v. *Bryant*, 1 Pick. 118. But it was not necessary to show an express agreement to contribute, and there being no finding that there was an express agreement, the question presented by the request became a purely academic one. The statute of frauds does not apply, because the parol agreement related to the obligations of the indorsers *inter sese*, and not to a promise to pay the debt of another ; also, so far as there was any promise it was one implied by law, as already observed, from the mutual relation of the parties when it was established that they were co-sureties. We do not see, under the circumstances disclosed by the exceptions, any difficulty in the bringing of the action by the plaintiffs jointly, or its maintenance, since Holman's death for the benefit of himself and Holman's estate. That mat-

ter is disposed of by *Clapp* v. *Rice*, 15 Gray, 557, it seems to us. We discover nothing in the facts stated in the bill of exceptions in regard to the sale of the assets of the corporation and the purchase of a portion thereof by Weeks, and the subsequent sale by him of the portion so bought, which requires that he should account for any profit that he might have made.  It does not even appear that he made any profit.  But there is nothing tending to show fraud or collusion on the part of Weeks, or that the assets did not bring all that they were fairly worth, or that the sale was conducted otherwise than in entire good faith.  Under such circumstances the fact that Weeks was a director of the corporation does not require, we think, that he should account for the profit, if any, which he may have made.

*Judgment for the plaintiffs on the findings.*