# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## WILLIAM HODGES MANN v. J. L. BRADSHAW'S ADM'R, ET ALS.

June 14, 1923.

Absent, West, J.

1. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Liability of Prior Indorser to Later Indorser Paying the Note—Case at Bar.*—In the instant case, a creditors' suit, appellant and the debtor were the principal stockholders in a corporation. Notes of the corporation were indorsed by the appellant and the debtor. The uniform order of the indorsements of the notes was that the debtor was the first and the appellant the second indorser thereof. Upon default of the debtor the appellant paid the notes. Appellant and the debtor were not payees of the notes, but irregular indorsers.

   *Held:* That the appellant and the debtor were not joint indorsers of the notes but that the debtor was liable to the appellant by the express terms of section 64 of the negotiable instruments statute (Code of 1919, section 5626), as well as by virtue of section 68 of the same statute, for the whole amount which the appellant, by such indorsement, was obligated to pay and did pay.

2. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers.*—When several persons indorse a bill or negotiable note in succession, the legal effect is to subject them as to each other in the order they indorse. The indorsement imports a several and successive, and not a joint obligation, whether the indorsements be made for accommodation or for value received, unless there be an agreement *aliunde* different from that evidenced by the indorsements.

3. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Agreement to be Jointly Liable.*—Where successive indorsements of a note or notes are for accommodation of other parties, the indorsers for accommodation may make an agreement to be jointly and equally bound, but whoever asserts such an agreement must prove it. In cases, therefore, in which no such agreement is proved, the indorsers are not bound to contribution amongst themselves, but each and all are liable to those who succeed them.

4. BILLS, NOTES AND CHECKS—*Indorsement—Successive Indorsements—Right of Indorser Paying and Taking up Note.*—An indorser, by paying

and taking up a note, becomes the lawful holder thereof, with the right to enforce the terms of the contract contained in the note against all prior indorsers.

5. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Liability of Prior Indorser to Later Indorser Paying Note—Case at Bar.*—In the instant case, a creditors' suit, appellant and the debtor were the principal stockholders in a corporation. Notes of the corporation were indorsed by the appellant and the debtor. The uniform order of the indorsements of the notes was that the debtor was the first and appellant the second indorser thereof. Upon default of the debtor the appellant paid the notes. The notes in question were renewals of a series of notes of the same parties in which there was no particular order of indorsement as between appellant and the debtor. It was contended from this and the common interest of appellant and the debtor that it would be inferred that the appellant and the debtor were joint indorsers of the notes in question.

    *Held:* That there was no merit in this contention.

6. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Code of 1919, Section 5630—Parol Evidence.*—Code of 1919, section 5630, provides that indorsers are *prima facie* liable in the order in which they indorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise. While parol evidence is admissible on the question of such agreement, and the agreement may not be expressed, but may be inferred, yet the agreement inferred must be an agreement in fact.

7. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Code of 1919, Section 5630—Indorsers Having a Common Interest.*—Where the evidence discloses that the indorsers of the negotiable paper of a corporation have a like common interest, and none have any peculiar interest, in the purpose for which the paper is negotiated, (as where the indorsers are all stockholders or directors of the corporation, or all have other like common interest, and none have any peculiar interest in the matter), and they all indorse the paper without evidencing that there was any thought or designed action on the part of any of them as to the order in which they place their names on the paper, such circumstances will warrant, although they do not compel, the inference of fact that they have agreed among themselves to participate together in the liability; which means, in substance, that they have agreed among themselves to be jointly bound, and hence may be regarded as joint indorsers on the notes indorsed while such relations existed.

8. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Code of 1919, Section 5630—Indorsers Having a Common Interest—Case at Bar.*—But this rule that indorsers of corporate paper

having a common interest are to be regarded as joint indorsers, is not true of indorsers on subsequent notes delivered by the indorsers as renewals, where there is any evidence that there was thought or designed action on the part of the indorsers with respect to the order in which they placed their names on the renewal paper. And if, in the instant case, the evidence disclosed such relations during the period 1907 to 1909 that the inference is warranted that the notes indorsed by appellant and the debtor during that period were indorsed by them as joint indorsers, the evidence also discloses that during the period of 1909 to 1913 and 1914, the final notes in suit were all indorsed in one and the same order, first by the debtor and last by the appellant, which shows  designed action on the part of such indorsers.

9. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Indorsers—Renewal Notes—Case at Bar.*—In the instant case, a creditors' suit, it was argued that as appellant and the debtor had once been bound as joint indorsers on the original notes, appellant was not released from such joint obligation by renewal notes subsequently given, in which the debtor was the prior indorser and the appellant the last indorser. It did not appear that the maker of the notes was insolvent at the time when the renewal notes were given.

*Held:* That there was no merit in this contention, as the original notes were extinguished as obligations when the renewal notes were given.

10. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Consideration—Case at Bar.*—In the instant case, a creditors' suit, appellant and the debtor were the principal stockholders in a corporation. Notes of the corporation were indorsed by the appellant and the debtor. At first there was no particular order of indorsement as between appellant and the debtor, but later the appellant became uneasy and refused to indorse the renewals unless the debtor would become first indorser on them. This the debtor did.

*Held:* That Code of 1919, section 5630, which is but an enactment of the common law ruling on the  subject, required, in such case, no consideration as between appellant and the debtor to support the effect given by the statute to the order of indorsement as actually made.

11. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Consideration—Case at Bar.*—In the instant case, a creditors' suit, appellant and the debtor were the principal stockholders in a corporation. Notes of the corporation were indorsed by the appellant and the debtor. At first there was no particular order of indorsement as between appellant and the debtor, but later the appellant became uneasy and refused to indorse the renewals unless the debtor would become first indorser on them. This the debtor did. It was argued that this did not establish the fact that the debtor actually agreed to be first liable; and evidence was introduced to show that the debtor did not consider that he was so liable.

12

*Held:* That there was no burden upon appellant to prove an actual agreement on the part of the debtor to become first liable, as the order of indorsements (Code of 1919, section 5630) imposed that liability upon him, in the absence of affirmative evidence that the appellant and debtor between themselves "agreed otherwise," and the burden was upon the appellees to prove such an agreement.

12. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Statute of Limitations—Suspension of Statute by Creditors' Suit—Case at Bar.*—In the instant case a creditors' suit, the appellant paid and took up notes upon which the debtor was first indorser and the appellant second indorser. Appellant's claim to be reimbursed from the debtor's estate did not rest upon any implied promise or contract growing out of the relations of the appellant and debtor as joint debtors, but arose by virtue of section 5630 of the Code of 1919, upon the payment of the notes by appellant as last indorser and was founded upon the notes themselves and upon the prior indorsements of the debtor.

   *Held:* That by the terms of the statute of limitations (Code of 1919, section 5810) the period of limitation upon the right of action was five years after the right of action first accrued, and the running of the statute was suspended by the entry of the order of reference in the creditors' suit for the account of debts..

13. BILLS, NOTES AND CHECKS—*Indorsement—Liability of Successive Indorsers—Payment of Note by Joint Indorsers—Statute of Limitations—Case at Bar.*—In the instant case, a creditors' suit, appellant and the debtor were joint indorsers upon a note, which upon default of the debtor appellant paid.

   *Held:* That the three year period of the statute of limitations applied to the obligations of the debtor to repay appellant the one-half of the note which appellant paid in excess of the one-half for which he was liable.

14. SURETYSHIP—*Cosurety Paying in Excess of his Share of the Liability—Right of Action of Surety Against Cosurety Based on Implied Promise.*—Where the obligation of sureties is joint, and one pays in excess of his share of the liability, as between himself and his cosurety or cosureties, it is well settled that the right of action of such surety against a cosurety or cosureties, for repayment of such excess payment, is based solely on the implied promise growing out of the equitable relations which the sureties, as jointly bound, bear to each other, and not upon the written contract by which they became sureties.

15. CREDITORS' SUIT—*Allowance of Attorney's Fees by Court—Counsel for Administrator of Debtor—Case at Bar.*—In the instant case, a creditors' suit, counsel for the administrator of the debtor was entitled to an allowance out of the fund in the hands of the administrator of reasonable fees for all services rendered the administrator in giving

legal advice, drafting and filing the answer of the administrator in the cause, and other pleadings by the administrator setting up the statute of limitations, also in representing the administrator in settling his accounts before the commissioner, in attending the taking of the depositions, in keeping in touch with all proceedings in the suit so as to protect the interests of the administrator should occasion therefor arise; and also for such legal services as were rendered the administrator or the estate by such attorney as counsel and attorney for the administrator, outside of the proceedings in the suit.

16. CREDITORS' SUIT—*Allowance of Attorney's Fees by Court—Counsel for Administrator of Debtor—Case at Bar.*—In the instant case, a creditors' suit, the estate of the debtor was plainly insolvent even if the whole of the claims of appellant had been disallowed. The actual controversy in the suit was in truth wholly between creditors. The attorney for the administrator was also counsel for creditors whose debts aggregated something over a third of the total indebtedness reported by the commissioner, so that the active defense made by the attorney could not and did not benefit the beneficiaries of the estate, other than his creditor clients and other creditors.

*Held:* That these facts must be taken into consideration in allowing counsel fees to the attorney as attorney for the administrator, and that no fee should be allowed him as such attorney for actively contesting the allowance of the appellant's claims, beyond the filing of the pleadings.

17. COSTS—*Attorney's Fees—One Party Contributing to Fees of Counsel for Another.*—Generally the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers, creates or preserves a fund which enures to the common benefit of all.

18. COSTS—*Allowance of Counsel Fees—Notice—Code of 1919, Section 3430.*—In the instant case, a creditors' suit, the trial court allowed fees to counsel for the administrator of the debtor. The opposite parties interested were given no notice whatsoever of the application for the counsel fees prior to the decree, as required by section 3430 of the Code of 1919, other than as contained in the draft of the proposed decree, and that draft contained no claim for any allowance of attorney's fees for services rendered outside of the suit.

*Held:* That the case should be remanded for the ascertainment and allowance of reasonable attorney's fees.

Appeal from a decree of the Circuit Court of Sussex county, in a general creditors' suit. From which decree appellant, the creditor, appeals.

*Reversed and remanded for further proceedings.*

This is a general creditors' suit, instituted on August 24, 1918, by two creditors of J. L. Bradshaw, deceased, in behalf of themselves and all other creditors of such decedent, who "may come in," etc., against administrator, the widow and children of said decedent, seeking to subject the funds in the hands of the administrator to the payment of the debts of the decedent.

The administrator and widow filed their joint and several answer. The children (all infants) answered by guardian *ad litem.*

On August 24, 1918, there was an order of reference to a commissioner in chancery for an account of assets and debts of the estate. There was a commissioner's report accordingly made and filed, the substance of which was that the administrator had in hand for distribution a balance of $11,599.05, consisting of $10,-936.76, collected from the Farmers' and Mechanics' Bank of Burkeville, Va., being the balance in the hands of such bank from $15,000.00 of policies of insurance on the life of the decedent collected by a receiver in a suit in Nottoway circuit court appointed for that purpose, after deducting the amount of certain notes for which the policies were held by such bank as collateral security, and the residue derived by the administrator from the sales of all of the personal property of and from the collections of the debts owing to the decedent, after deducting the commissions of the administrator and other proper disbursements and expenses of administration set forth. The report further showed that a number of debts of the estate (the creditors being twelve in number, including the widow in her own right and as guardian, and one other creditor represented by the same attorney who represented the administrator) were proved before the commissioner, aggregating $32,817.08; of which the debts represented by the same counsel who

represented the administrator amounted to $11,144.19; the debts of the appellant, William Hodges Mann, which amounted to the aggregate of $16,285.86, represented by his separate attorney; and all or practically all of the other debts were represented either by the same attorney who was counsel for the plaintiffs, or by another attorney.

As appears from said commissioner's report and exhibits therewith, of the debts reported as aforesaid in favor of appellant, Mann, the amount of $12,597.00, principal, together with an unpaid balance of $637.70 of interest accrued thereon to January 1, 1919 (after deducting a certain credit of money received by appellant on account of such debts from the trustee under a deed of trust given by the decedent), was evidenced by eight (8) negotiable notes, all executed by J. L. Bradshaw Cooperage Company, Inc. (a corporation), as maker, payable to itself or order, indorsed by the corporation "by J. L. Bradshaw, manager," and thereafter by "J. L. Bradshaw," and "Wm. H. Mann" (the appellant), in that order. Six of such notes, payable three months after date, were made payable at, discounted and held at maturity by, the Bank of Crewe, Crewe, Va., and were for the amounts, of the dates, and matured as follows: One for $1,900, dated April 11, 1913, due July 11, 1913; another for $765, dated July 23, 1913, due October 23, 1913; another for $3,000, dated August 28, 1913; another for $3,750, dated September 3, 1913, due December 3, 1913; another for $1,263, dated June 30, 1913, due September 30, 1913; and another for $519, dated July 21, 1913, due October 21, 1913; and two of such notes were made payable at, discounted, and held at maturity by, the Farmers and Merchants Bank, Burkeville, Va., and were for the respective amounts of $900 and $500, and they were both

dated November 18, 1914, and payable two months after date, falling due on January 18, 1915. None of these notes were paid when they fell due, and the aforesaid banks, at their maturity, duly protected all of said notes. Thereafter, on February 5, 1915, the appellant Mann, as indorser thereon, paid to the Bank of Crewe the said notes held by it, and on February 18, 1915, paid to the Farmers and Merchants Bank the said notes held by it, as aforesaid, took up such notes and subsequently produced them before said commissioner (after deducting the credit above mentioned, the details of which are not material to this suit), as evidencing the said amount of indebtedness of said decedent to him arising from the facts as claimed by him, that he, as last indorser, paid the notes because of the default of the decedent, who, as prior indorser, was obligated to pay the whole of such amount; and the commissioner, as aforesaid, reported such indebtedness against such estate in favor of appellant.

The remainder of the indebtedness reported by such commissioner in favor of appellant consisted of payments made by appellant in excess of the one-half thereof owing by him on a certain joint note and a certain joint bond executed by said decedent and appellant as makers; and about the fact that such obligations were joint obligations there is no controversy upon the appeal. The commissioner so reported. There was no exception to the report in that particular by appellant or appellees. Therefore, no statement need be made of the details with respect to such remainder of indebtedness, except to say that the dates on which appellant paid these joint obligations are stated in the opinion.

The chief subject of controversy upon the appeal is whether there is sufficient evidence in the cause to show that, as between themselves, the decedent and appel-

lant agreed that their obligations as indorsers of the notes held by and paid to said two banks should be their joint obligations.

As bearing upon the subject just mentioned, the appellant, Mann, filed the notes just mentioned in evidence before the commissioner and in his testimony in chief (which though not taken before the commissioner was stipulated by agreement between counsel should be considered as if so taken), stated that they were all indorsed "first" by the said decedent and "second" by himself.    The appellant also introduced in his behalf the depositions of J. P. Agnew, the cashier of the aforesaid Bank of Crewe, and W. H. Sheffield, the cashier of the aforesaid Farmers and Merchants Bank, who in their testimony in chief stated that such notes were all indorsed by the decedent as first indorser and by the appellant as second indorser; and that the notes were protested for nonpayment and were all paid by the appellant as above stated.

The appellant and the cashiers aforesaid were the only witnesses who testified in the cause.

The decedent died on March 13, 1918, before this suit was instituted.

The appellees, however, elicited in their behalf the following testimony upon cross-examination of appellant and of said cashiers, namely:

The appellant, on cross-examination, testified in substance as follows:

That the capital stock of the J. L. Bradshaw Cooperage Company, Inc., was $20,000.    That the decedent's wife held one share, appellant's wife or some of his friends held one share, and that appellant owned one-half and decedent the other half of the residue of such stock.

That the aforesaid notes which appellant paid to the

two banks were renewal notes given in renewal of other notes, which in turn were alike given, forming a series of renewal notes, executed by the same maker and indorsers, the indorsements being uniformly by decedent as first indorser and by appellant as next and last indorser for a period of some years prior to the final notes given such banks. That some of such series of renewal notes had their origin in notes given by the J. L. Bradshaw Cooperage Company, Inc., in 1907, in satisfaction of the obligations of the Bradshaw Lapham Manufacturing Company, in which appellant and decedent were at the time the only solvent stockholders. That the last named company went into bankruptcy and its assets were taken and its liabilities were assumed by the J. L. Bradshaw Cooperage Company, Inc., its successor. That for some time after 1907 there was no particular order of indorsement of the notes given as aforesaid, which were indorsed by appellant and the decedent. That the decedent was the sole manager of the company (appellant charging nothing for his services, having received no dividend or other benefit, and taking no active part in the conduct of its affairs), and by his reports to appellant (who was president of the company), the decedent satisfied appellant for some years that the company was solvent, would succeed and do well eventually. That appellant became bound upon and indorsed the aforesaid original obligations of the J. L. Bradshaw Cooperage Company, Inc., because of his interest as stockholder in the company and the belief, induced as aforesaid, that the company was solvent and would succeed, and because the banks required his indorsement as well as that of the decedent before accepting the notes. But that later on (the witness not stating any precise time) appellant became uneasy and decided not to indorse any more of the renewals and to

let the business be wound up, unless the decedent would become first indorser on all renewals and so notified the decedent and required the latter to assume that liability. That accordingly, thereafter the decedent signed first as indorser and appellant second and last as indorser on all of the renewal notes given said banks. On this precise point appellant testified on re-cross-examination as follows:

"Q 105. You say you required him to indorse the notes and assume the liabilities in this case, how do you mean you required him to assume the liability?

"A. I told him that he had all of the assets of the concern in his hands, that I had not received a single cent from the corporation in any way, that he represented the condition of the corporation to be good and likely to be successful; and I could not indorse these notes unless he became personally liable, because he was in a better shape to understand the situation than I."

The appellant nowhere in his testimony, however, states that the decedent expressly agreed to become liable as first indorser on the notes. His testimony merely amounts on this point to this, namely: That after the notification just mentioned the decedent did in fact uniformly indorse all of the said notes given said banks first and appellant second and last.

The appellant on cross-examination further testified that the "last renewal note was signed because I was obliged to do it to save myself from ruin and I was doing the best I could until I could handle the situation, until 1915 when I had a streak of luck." Also that the J. L. Bradshaw Cooperage Company, Inc., made a general assignment for the benefit of creditors in 1913; was afterwards thrown into bankruptcy; that all of its assets were consumed in payment of preferred

labor debts, the aforesaid claims of appellant receiving nothing therefrom. That the decedent, in September, 1913, conveyed all of the real estate owned by him individually, and certain personal property, by deed of trust to secure the payment of all debts and liabilities of his of every kind, from which source the credit above mentioned on the claims of appellant was received.

The cashier of the Bank of Crewe, on cross-examination, and in written statements made and filed pursuant to requests made of him on cross-examination, testified in substance as follows:

That the aforesaid notes which were held by the Bank of Crewe and paid as aforesaid by appellant were given to and accepted by the bank in renewal of other notes of the J. L. Bradshaw Cooperage Company, Inc., all of which, except the aforesaid $765 note, had their origin in notes given by such maker in 1907 in satisfaction of a number of obligations of the Bradshaw Lapham Manufacturing Company. That some of such obligations of the Bradshaw Lapham Manufacturing Company were drafts for payment of which neither appellant nor decedent were personally bound. That the residue of such obligations, however, were notes, some of which were made by that company, of which some were indorsed by the decedent alone, some by the appellant alone, some by both appellant and decedent in different orders of indorsement, on some of these was a third indorser, and one was indorsed by decedent and guaranteed by appellant. That the notes given in 1907 by the J. L. Bradshaw Cooperage Company, Incorporated, in satisfaction of the obligations of the Bradshaw Lapham Company, as aforesaid, were renewed from time to time, at short intervals (usually every three months), some curtail payments being made by the J. L. Bradshaw Cooperage Company at times and consolidations

of notes or of balances thereof being also made from time to time, resulting in a series of renewal notes having been given to such bank during the years from 1907 to 1913 and 1914, inclusive, up to and including the aforesaid notes which were paid by appellant as aforesaid. That from 1907 to some time early in the year 1909 no particular order is to be found in the indorsement of such original or renewal notes by appellant and the decedent, or in the other ways in which they obligated themselves personally upon such notes; but that from early in the year 1909 up to and including the final notes which were given in 1913 and 1914, which were paid by appellant, as aforesaid (as shown by the preponderance of the testimony of Angew), all of such renewal notes were indorsed by J. L. Bradshaw and next after him and last by appellant; and this was also true of the original of the $765 note aforesaid, which was first executed on January 25, 1909, and of all renewals thereof. There is some obscurity in the evidence with respect to one of the renewal notes given subsequent to 1907 above mentioned, namely, a note for $3,950, dated June 7, 1911, made by the J. L. Bradshaw Cooperage Company, Inc. In one of the written statements of Agnew, in evidence, this witness states that this renewal note was indorsed "by W. H. Mann and J. L. Bradshaw," but he adds that this note "was renewed by a note for $3,750, dated June 24, 1911;" and, in his deposition (referring to the aforesaid final notes among which was the final $3,750 note, which traced back in the series of renewals aforesaid to the $3,750 note dated June 24, 1911, and which final $3,750 was first indorsed by the decedent and secondly by appellant, as aforesaid) this witness stated expressly that "all the notes named   *   *   were indorsed just as the notes which they renewed were indorsed." And, in his

deposition, this witness called attention to the fact that counsel cross-examining him "placed the name of Wm. H. Mann first" in asking about notes indorsed "by Wm. H. Mann and J. L. Bradshaw," and in this connection stated this: "That does not refer to the order of indorsements on the notes." So that upon the whole it appears, as aforesaid, from the preponderance of the evidence, that the uniform order of indorsements of all of the notes held by the Bank of Crewe, from early in 1909 up to and including the final notes given that bank as aforesaid, was that the decedent was the first and appellant the second indorser thereof.

The cashier of the Farmers and Merchants Bank, Sheffield, on cross-examination and in a statement in writing made and filed pursuant to request made of him on cross-examination, testified that the original of the two notes held by and paid to that bank, as aforesaid, were executed on January 28, 1909, and February 23, 1909, respectively, by the J. L. Bradshaw Cooperage Company, Inc., by J. L. Bradshaw, manager, as maker, so indorsed, and next indorsed by J. L. Bradshaw, and next and last indorsed by appellant; and that the same was true of all renewals of such notes down to and including the notes paid by appellant, as aforesaid.

The administrator, by counsel, filed a plea of the three years' statute of limitations (Code, section 5810) as against the whole of the indebtedness reported in favor of appellant in said commissioner's report, on the ground that all of the obligations paid by appellant and asserted before the commissioner, as aforesaid, were joint obligations of the appellant and the decedent, so that, as to all of them, the estate of the decedent was at no time liable to appellant beyond so much of such obligations as was paid by appellant in excess of the one-half thereof for which he was himself bound as

joint indorser, or joint obligor, and that as to such excess payments the cause of action of the appellant was founded solely upon the implied promise of decedent to repay the same, recovery upon which was barred by the statute after three years from the time such causes of action arose, and that such cause of action did not arise within three years, etc.

The same defense was also made by exceptions filed by the administrator by counsel to the said commissioner's report.

None of the creditors asserted for themselves such ground of defense.

Further:   The administrator, the widow and the creditor, represented by the same counsel who was counsel for the administrator, filed exceptions to the allowance in said commissioner's report of any indebtedness of the estate of the decedent to appellant beyond so much of the obligations asserted by the latter as was paid by him in excess of the one-half thereof for which he was bound  (as alleged) as joint indorser; and the other creditors by counsel united in such exception.

The deposition of the appellant was taken and the commissioner's report was filed before the Code of 1919 went into effect; but no decree was entered thereon until after the Code was in force; and when that Code was in force, to-wit, on June 11, 1921, prior to the entry of the decree under review, a stipulation between all of counsel in the cause was filed, the provisions of which so far as material were as follows:

That the deposition of appellant should "be read as evidence in this case with the same force and effect in all respects as if the deposition had been taken under the provisions of section 6209 of the Code of Virginia, 1919, and other provisions of the said Code of 1919, and no other effect."

The decree under review was entered on January 26, 1922. It held that the appellant and the decedent were joint indorsers upon the notes held by and paid to the two banks as aforesaid. It overruled the plea of the statute of limitations to the right of the appellant to recover the amount paid by him on such notes, and also on the joint note and bond aforesaid, in excess of the one-half for which he was bound as joint obligor; decreed that appellant was entitled to recover from the estate of the decedent the total amount of such excess paid by him, to such banks, with interest, less a credit by the amount received by him, as aforesaid, from the trustee under the deed of trust given by decedent to secure those and other debts—stating the respective amounts of the recovery and credit mentioned, resulting in a balance being decreed of $5,995.48, with interest from January 1, 1919, as the sum appellant was entitled to recover; that appellant was entitled to prorate accordingly with the other creditors in the distribution of the estate; that the commissioner's report in all other respects was confirmed; and that the administrator proceed to disburse the funds in his hands as follows:

"He shall first pay all unpaid taxes now due on the funds in this cause, and all unpaid costs in this suit, including a fee of $800.00 to W. B. Cocke, attorney for said administrator, which the court allows him for his services in this suit and in the suit heretofore pending in the Circuit Court of Nottoway county, in which the funds now under the control of this court in this cause were recovered from the Bank of Crewe, and for his services to said administrator out of court, it appearing that said Cocke has never received any compensation for any services rendered said administrator.

"Second. He shall distribute and pay out of the bal-

ance then remaining in his hands, *pro rata* upon the debts proven in this cause, as shown by Commissioner Person's report, except that as to the claim of William Hodges Mann, he shall prorate on the basis of $5,995.48, with interest from January 1, 1919, adjudged by the court to be the correct amount of his said claim and not on the basis of $16,285.86, allowed by Commissioner Person; and the said administrator, Fleetwood, will report to court how he has executed this decree.''

No claim for allowance of any fee or compensation to counsel out of money under the control of the court was stated in any pleading in the cause. The only notice in writing that application would be made to the court for the allowance of counsel fees made in the decree under review was this: Shortly before the decree was entered the attorney for the administrator sent through the mail to counsel for appellant a draft of the decree as it would be asked for, which was the same in its contents as the decree as entered, except that it did not contain the words, ''and for his services to said administrator out of court, it appearing that said Cocke has never received any compensation for any service rendered said administrator.'' Counsel for appellant thereupon immediately wrote the judge of the court below objecting to the allowance of this fee. Whereupon the words just quoted were added to the decree, the decree was forthwith entered, and counsel were so informed.

There was no inquiry made by the commissioner nor report made by him on this subject; nor was there any evidence in the cause bearing on the subject, other than what appears incidentally from the proceedings and facts appearing in the cause which have been above stated.

*W. H. Mann, Jr.,* and *James Mann,* for the appellants.

*J. E. Person, Thos. H. Howerton, Robt. W. Arnold,* and *Wm. B. Cocke,* for the appellees.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

There are both assignments and cross-assignments of error. The questions thereby presented for decision will be disposed of in their order as stated below.

[1] 1. Do the evidence and the law sustain the holding of the decree under review to the effect that the appellant and the decedent were joint indorsers of the notes in suit held by the two banks and paid to them by appellant?

The question must be answered in the negative.

Section 68 of the negotiable instruments statute, (Code, section 5630) provides as follows:

"*Order in which indorsers are liable.*—As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsers who indorse are deemed to indorse jointly and severally."

The appellant and the decedent were not payees of the notes in suit, and, so far as appears from the notes themselves and from the fact that the notes were indorsed by both of them in blank before delivery, and that they signed for the accommodation of the payee (all of which appears without conflict from the testimony of the cashiers of the banks), they were irregular indorsers (not joint indorsers), and the decedent was liable to appellant, by the express terms of section 64 of the negotiable instruments statute (Code, section 5626), as well as by virtue of the aforesaid provisions of section 68 of the same statute, for the whole amount

which the appellant, by such indorsement, was obligated to pay and did pay because of such obligation. See also 1 Daniel on Neg. Inst. (6th ed., compiled after the negotiable instruments statute was enacted in Virginia), section 703 (8).

[2, 3] In the authority last cited this is said: "When several persons indorse a bill or negotiable note in succession, the legal effect is to subject them as to each other in the order they indorse. The indorsement imports a several and successive, and not a joint, obligation, whether the indorsements be made for accommodation or for value received, unless there be an agreement *aliunde* different from that evidenced by the indorsements. Where the successive indorsements are for accommodation of other parties, the indorsers for accommodation may make an agreement to be jointly and equally bound, but *whoever asserts such an agreement must prove it.* In cases, therefore, in which no such agreement is proved, the indorsers are not bound to contribution amongst themselves, but each and all are liable to those who succeed them." (Italics supplied.)

It is plain, therefore, that by the notes in suit, in evidence and by the testimony in chief of the two cashiers, the appellant, *prima facie*, made complete and sufficient proof of so much of his claims as was evidenced by such notes. It appeared from such proof that, because of the order of indorsement, appellant and the decedent were not joint indorsers of those notes, but that their liability thereon was several; and that the decedent, being the prior indorser, was liable to appellant for the whole amount of appellant's claims which was evidenced by such notes, they having been paid by appellant upon the default of the decedent in making such payment in accordance with the aforesaid obligation resting upon him as prior indorser.

[4] In such case, the appellant, by paying and taking up such notes, became the lawful holder thereof, with the right to enforce the terms of the contract contained in the notes "against all prior indorsers." *Cox* v. *Hagan*, 125 Va. 656, at p. 668, 100 S. E. 666, and 3 R. C. L., sec. 337, p. 1121, there cited and the cases therein cited.

[5-8] 2. But it is argued in behalf of appellees that by the evidence brought out by the cross-examination of appellant and of the two cashiers, the *prima facie* case made by the testimony in chief for appellant is over-turned, because such evidence discloses the existence at one time (1907 to 1909) of such relations between the appellant, the decedent and the maker of the notes in question that, under the authorities on the subject, it will be inferred that the appellant and the decedent were joint obligors and joint indorsers of the notes executed and indorsed by them during that period of time; and because such evidence discloses also that the notes in question, although given and indorsed at a later time, (1913 and 1914) were given by the maker and indorsed by appellant and the decedent in renewal of the series of notes which were alike given and indorsed (1909 to 1913 and 1914) in renewal of those given and indorsed in the first mentioned period of time; from which, it is contended, that, under such authorities, it will also be inferred that the appellant and the decedent were joint indorsers of the notes in question; and the following authorities are cited in support of such contention, namely: *Weeks* v. *Parson* (1900), 176 Mass. 570, 58 N. E. 157; *Trego* v. *Cunningham's Estate*, 267 Ill. 367, 108 N. E. 350; *Plumley* v. *First National Bank*, 76 W. Va. 635, 87 S. E. 94; *Hagerthy* v. *Phillips*, 83 Me. 336, 22 Atl. 223; *McDonald* v. *Whitfield*, L. R. 8 App. Cas. 733; *George* v. *Bacon*, 138 App. Div. 208, 123 N. Y. Supp. 103; *Haddock B. & Co.* v. *Haddock*, 192 N. Y. 513, 85

N. E. 682, 19 L. R. A. (N. S.) 136; *Reed* v. *Union Trust Co.* (1917), 26 Pa. Dist. R. 833; *Strasburger* v. *Myer & Co.*, 167 App. Div. 198, 152 N. Y. Supp. 757; *Lee* v. *Boykin* (1920), 114 S. C. 480, 103 S. E. 777, 11 A. L. R. 1328.

But, while unquestionably parol evidence is admissible on the subject, certainly under the negotiable instrument statute (see 1 Daniel on Neg. Inst. [6th ed.], sec. 703 (8), p. 785; *Haddock, Blanchard & Co.* v. *Haddock*, 192 N. Y. 499, 85 N. E. 682, 19 L. R. A. [N. S.] 136; *Alphin* v. *Lowman*, 115 Va. 441, 79 S. E. 1029, Ann. Cas. 1915 A, 863), an examination of the authorities cited and relied on, as aforesaid, discloses that while they hold that the agreement, allowed by the statute (Code, section 5630) to vary the *prima facie* rule therein provided, need not be an express agreement—that such agreement may be inferred; still they all require that the agreement inferred must be an agreement in fact, and none of them go any further than the holding that where the evidence discloses that the indorsers of the negotiable paper of a corporation have a like common interest, and none have any peculiar interest, in the purpose for which the paper is negotiated (as where the indorsers are all stockholders or directors of the corporation, or all have other like common interest, and none have any peculiar interest in the matter), and they all indorse the paper without evidencing that there was any thought or designed action on the part of any of them as to the order in which they place their names on the paper, such circumstances will warrant, although they do not compel, the inference of fact that they have agreed among themselves to participate together in the liability; which means, in substance, that they have agreed among themselves to be jointly bound, and hence may be regarded as joint indorsers on the notes

indorsed while such relations existed. See also on this subject 1 Daniel on Neg. Inst., sec. 703a; *In re McCord,* (D. C.) 174 Fed. 72; *McCarty* v. *Roots,* 21 How. 432, 457, 16 L. Ed. 162; *McDonald* v. *Magruder,* 3 Pet. 470, 7 L. Ed. 744. But none of such authorities holds that the same is true of indorsers on subsequent notes delivered by the indorsers as renewals, where there is any evidence that there was thought or designed action on the part of the indorsers with respect to the order in which they placed their names on the renewal paper. And if it were conceded that the evidence brought out on the aforesaid cross-examinations discloses such relations as existing between the parties during the period 1907 to 1909 that the inference is warranted that the notes indorsed by appellant and the decedent during that period were indorsed by them as joint indorsers, the same evidence, after excluding altogether any consideration of the testimony of the appellant on the subject (namely the notes themselves and the testimony of the two cashiers), discloses that during the priod of 1909 to 1913 and 1914, the notes indorsed by appellant and the decedent, including the final notes in suit, were all indorsed in one and the same order, namely, first by the decedent and next and last by appellant, as contradistinguished from the lack of any fixed order of indorsement or execution of the paper prior to such period, which satisfies us that, as to such notes, there was thought and designed action on the part of such indorsers, as to the order in which they placed their names on the paper. Hence, such notes plainly do not fall within the influence of the aforesaid authorities cited and relied upon for appellees; so that the *prima facie* case made by appellant, as aforesaid, remains unaffected by the evidence brought out on the cross-examinations aforesaid.

In *Adams* v. *De Frehn*, 27 Pa. Sup. Ct. 184, cited and relied on for appellees, the instrument was made payable to the order of the indorsers, hence they were joint indorsers, as appeared from the instrument itself.    The case, therefore, has no application to the subject next above considered.

[9] 3. It is urged in argument for appellees that appellant having been once bound as joint indorser, or obligor, on the original notes aforesaid, given during the period 1907 to 1909, he was not released therefrom by the renewal notes subsequently given.

It is elementary that the original notes were extinguished as obligations when the renewal notes were given by the maker and also by the indorsers, and were accepted by the payee as such, and not merely as collateral. *Adams* v. *De Frehn*, 27 Pa. Sup. Ct. 184.    In the instant case the maker of the notes does not appear from the evidence to have been insolvent when the series of renewal notes began, in 1909, with the uniform order of indorsement aforesaid, so that the doctrine has no application which is announced in *Trego* v. *Cunningham's Estate*, 267 Ill. 367, 108 N. E. 350, and relied on for appellee, namely, the holding therein that, where the maker corporation is insolvent at the time a renewal note is given, the right of the solvent indorsers of the renewal note to require contribution from the estate of a joint indorser with them of the original note, who refused to go upon the renewal note, will not, in equity, be precluded.

[10] 4. It is also urged in behalf of the appellees that no consideration moved from the appellant to the decedent to sustain the change in the order of the indorsement which began in 1909 and was thereafter continued.

It is sufficient to say as to this that the statute (Code, section 5630), which is but the enactment of the com-

mon law rule on the subject, requires, in such case, no consideration to support the effect given by the statute to the order of indorsement as actually made, other than the fact that there is no agreement as between the indorsers themselves that they will be jointly bound. The principles on which this doctrine rests are set forth in 1 Daniel on Neg. Inst. (6th ed.), section 703 (8), as follows:

"This doctrine rests upon very clear and satisfactory principles. Each indorser places his name upon the instrument, whether for accommodation or otherwise, knowing that he renders himself conditionally liable to every subsequent and successive indorsee   *   *   for the whole amount he may be obligated to pay. With such knowledge of his liabilities   *   *   he assumes his relation to the instrument with others who assume a different relation, accompanied by increased or diminished risk of loss. And contribution does not arise between such successive indorsers for the accommodation of another party by operation of law, but only where established by special agreement."

[11] 5. It is further argued in behalf of appellees that the testimony of the appellant, to the effect that he told the decedent personally, at the time the changed order of indorsements began, that he (appellant) would not in future indorse the notes unless the decedent made himself first liable, and the subsequent action of the decedent in uniformly placing his name first in indorsing the notes, does not establish the fact that the decedent actually agreed to be first liable; and the following testimony of the cashier, Agnew, on cross-examination, is relied on for appellees as showing that the decedent did not consider that he was so liable, namely:

"In the fall of 1913, before the notes were paid, J. L. Bradshaw stated before several gentlemen who were

present, that he was willing to pay one-half of the notes then due by the J. L. Bradshaw Cooperage Company to the Bank of Crewe, upon which Wm. H. Mann and J. L. Bradshaw were indorsers, if Wm. H. Mann would pay the other half.   Wm. H. Mann said he would not admit that he was indebted to the Bank of Crewe as joint indorser on any of said notes, claiming that he had underwritten Mr. Bradshaw's indorsement.   That is all I recall."

If it were conceded that the position just stated as taken for appellees is correct, that would be immaterial. As we have seen, there was no burden upon appellant to prove an actual agreement on the part of the decedent to become first liable.   The order of the indorsements of the notes in question resulted in imposing that liability upon the decedent, because of the provisions of the statute (Code, section 5630), in the absence of affirmative evidence that the appellant and decedent between themselves "agreed otherwise."   The burden was upon the appellees to prove such an agreement, certainly to the extent, at least, of producing evidence from which the inference that such an agreement existed should be drawn, in order to relieve the estate of the decedent from the *prima facie* liability imposed, under the circumstances, by the statute.   This, as we have seen, they failed to do, for even if it be conceded that the decedent did not actually agree that he would be first liable, it being manifest from the evidence that appellant never in fact agreed that the decedent should not be first liable, such liability arose by operation of law, as aforesaid, from the aforesaid order of indorsement of the notes in question.

6. Such being our views, it is unnecessary for us to deal with much of the evidence, not mentioned in detail, which bears on a further position taken for ap-

pellees, namely, that if the testimony of appellant just referred to were held to be sufficient to establish by inference the fact that the decedent actually agreed to be first liable, such testimony is uncorroborated; and that, therefore, under the statute on such subject (Code, section 6209), the decedent being incapable of testifying at the time of appellant's testimony, no decree could be rendered in favor of appellant founded on such testimony.

As we have seen, in view of the other evidence in the cause, a decree in favor of appellant, upon his claim to be repaid the amount owing to him because of his payment of the notes in suit, would not be founded on the testimony of appellant just mentioned, for the reason that proof on his part of an actual agreement on the part of the decedent to be first liable for the payment of such notes was in no way essential to the right of such recovery by appellant.

[12] 7. Should the plea of the statute of limitations (Code, section 5810), of three years, have been sustained by the court below as against appellant's claim founded upon his payment as indorser of the notes in suit?

The question must be answered in the negative.

As we have seen, the right of action of the appellant with respect to such claim was not founded upon any implied promise or contract of the decedent growing out of the relations of the appellant and decedent as joint indorsers of the notes in question. Such right of action arose by virtue of the statute (Code, section 5630); first accrued in February, 1915, upon the payment of such notes by appellant as last indorser thereon; was against the decedent in his lifetime and upon his death against his estate, founded upon the notes themselves and the prior indorsements of the decedent thereon;

and by the terms of the statute of limitations (Code, section 5810), the period of limitation upon the right of action was five years (and not three) next after the right of action first accrued.   The running of the statute was suspended by the entry of the order of reference for the account of debts, August 24, 1918, under which the appellant's claim now under consideration was proved before the commissioner, before the five years had run; so that the bar of the statute had no application thereto.

The following cases are cited and relied on for appellees to sustain the position that the right of action of the appellant upon the portion of his claim now under consideration was founded on an implied promise only, growing out of the equitable relations of himself and the decedent as cosureties, namely: *Tate* v. *Winfree*, 99 Va. 256, 37 S. E. 956; *Rosenbaum* v. *Goodman*, 78 Va. 126; *Stovall* v. *Bank*, 78 Va. 194; *Stout* v. *Vauce*, 1 Rob. (40 Va.) 179.   These were all cases of joint obligations of the sureties, and have, therefore, no application to the question under consideration.

[13] 8. Should the plea of the aforesaid statute of limitations, of three years, have been sustained by the court below, as against the claims of appellant founded upon his payments of the joint bond and joint note on which he and the decedent were obligated, in excess of the one-half thereof for which appellant was liable?

[14] Where the obligation of sureties is joint, and one pays in excess of his share of the liability, as between himself and his cosurety or cosureties, it is well settled that the right of action of such surety against a cosurety or cosureties, for repayment of such excess payment, is based solely on the implied promise growing out of the equitable relations which the sureties, as jointly bound, bear to each other, and not upon the written contract by which they became sureties.   *Tate*

v. *Winfree,* 99 Va. 255, 37 S. E. 956; *Faires* v. *Cockerell,* 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528.

In the instant case, all of the payments made by appellant of the joint note and bond, upon which he and the decedent were jointly bound as sureties, were made more than three years prior to the order of reference aforesaid, except a single payment, that of $327.33, paid by appellant on August 6, 1918, being the last payment in satisfaction of the joint bond aforesaid, executed by appellant and decedent. The plea of the statute of limitations, therefore, should have been sustained by the court below as to all of that portion of the claim of appellant which was founded upon his payments of the joint bond and joint note in question, except to the extent of $327.33 with interest thereon from August 6, 1918.

The only question remaining for our decision is the following:

[15] 9. Did the court below err in making the allowance of fees to counsel for the administrator contained in the decree under review?

In view of the provisions of the statute on the subject (Code, section 3430), the question must be answered in the affirmative.

This statute is as follows:

"No court shall make any decree or order for allowance of any fee or compensation to counsel to be paid out of money or property under the control of the court, unless the claim therefor be stated in the bill, petition or other proceeding, of which the parties interested shall have due notice, or unless such parties be notified in writing that application will be made to the court for such decree or order."

The counsel for the administrator is undoubtedly entitled to an allowance out of the fund in the hands of

the administrator of reasonable fees for all services rendered the administrator in giving legal advice, drafting and filing the answer of the administrator in this cause, and other pleadings by the administrator setting up the statute of limitations, also in representing the administrator in settling his accounts before the commissioner, in attending the taking of the depositions, in keeping in touch with all proceedings in the suit so as to protect the interests of the administrator should occasion therefor arise; and also for such legal services as were rendered the administrator or the estate by such attorney as counsel and attorney for the administrator, outside of the proceedings in the suit.

[16-18] As the estate was plainly insolvent, even if the whole of the claims of appellant had been disallowed, the actual controversy in the suit was in truth wholly between creditors; the attorney for the administrator was also counsel for creditors whose debts aggregated something over a third of the total indebtedness reported by the commissioner, so that the active defense made by such attorney could not and did not benefit the beneficiaries of the estate, other than his creditor clients and the other creditors, and they were all, or practically all, represented by counsel of their own selection. As held in *Stuart v. Hoffman*, 108 Va. 307, 61 S. E. 757: "Generally the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers, creates or preserves a fund which enures to the common benefit of all. The power is very capable of abuse, and hence should be cautiously exercised. It will not be exercised where, * * every party in interest was represented by counsel of their own choosing." We think the principle there involved is applicable to the instant case. Since the fund is insufficient

to pay the debts in full, any allowance of counsel fees of the administrator out of the fund is, in result, a contribution from the creditors to the fees of counsel for the administrator, another party and one who had no interest in the controversy in the suit. Of course, such result could not affect the right of the administrator to have the benefit of the services of counsel in all matters in which it was his duty to act for and protect the estate, or the authority of the court to allow reasonable fees. therefor—such as those indicated by what we have said above—but we do not think that any fee should be allowed the attorney for the administrator for actively contesting the allowance by the commissioner of the appellant's claims, beyond the filing of the pleadings aforesaid. It was his duty to do what he did in making such active contest as attorney for his creditor clients. Moreover, as appears from the statement preceding this opinion, the opposite parties interested were given no notice whatsoever of the application for the allowance of counsel fees prior to the decree, other than as contained in the draft of the decree as proposed to be asked for, sent to counsel for appellant through the mail, and that draft contained no claim for any allowance of counsel fees for services rendered outside of this suit. Therefore, the notice required by the statute on the subject was not given as to application for allowance of fees for the services last mentioned. Further: There is no evidence in the record before us to show that services were rendered by counsel for the administrator outside of this suit. The case will, therefore, have to be remanded to the trial court for further proceedings, by reference to one of its commissioners, or otherwise, as it may deem best, for the ascertainment and allowance of reasonable attorney's fees to the attorney for the administrator. *Lake's Adm'r* v. *Pattie,* 116 Va. 130, 81 S. E. 78.

We do not mean, however, by anything we have said that we are of opinion that the total amount of the aforesaid allowance of fees is excessive. For the reasons mentioned we cannot adjudicate that question. We have, therefore, stated for what services fees should be allowed counsel for the administrator, and we leave it to. the court below to decide upon the amount to be allowed as reasonable compensation for such services as it may find were rendered by such counsel.

The decree under review will, therefore, be reversed in so far as it allows the attorney's fee aforesaid and fixes the amount of the claims of appellant; the decree of this court will be entered, allowing the appellant, as the party substantially prevailing, to recover his costs in this court and in the court below, to be paid by the administrator out of the funds in his hands, and fixing the whole amount of the appellant's debts against the decedent's estate at $13,562.03, with interest on $12,597 plus $327.33 (the portions thereof which are principal), aggregating $12,924.33, from January 1, 1919, being the full amount upon which appellant is entitled to prorate with the other creditors in the distribution of the decedent's estate in the hands of the administrator for distribution amongst the creditors; and the cause will be remanded with the direction that the court below proceed, by reference to one of its commissioners, or otherwise, as it may deem best, to ascertain and allow the attorney for the administrator reasonable fees for the professional services rendered by him as counsel and attorney for the administrator, to which he is entitled as indicated by what we have said above on the subject, and for such other proceedings in the court below as may be proper, not inconsistent with this opinion.

*Reversed and remanded for further proceedings.*