HENRY VON GLAHN *v.* GEORGE HARRIS.

In an action against A, as a stockholder in the bank of C, to recover the value of certain notes or bills issued by said bank; the charter of the same providing that in case of insolvency, or ultimate inability of the bank to pay, the individual stockholders shall be liable to creditors in sums double the amount of the stock by them respectively held: *It was held*, that the creditors of the bank were joint obligors, and that such action must be brought in the name of the plaintiff and all the other creditors, who will become parties to the action, and prove their debts, so as to entitle them to a part of the fund.

Civil action, tried at the Spring Term, 1875, of the Superior Court of New Hanover county, before his Honor, Judge *McKoy.*

This was an action brought 22d of May, 1871, by plaintiff to recover of defendant, one of the stockholders of the Commercial Bank of Wilmington, alleging that the defendant was a stockholder to the extent of 20 shares of stock at the value of $100 per share, making $2,000. That the Bank is insolvent, and was so at the commencement of this action, and that the defendant was, and is liable under the clause of the charter, which reads: "That in case of insolvency or ultimate inability of the Bank to pay, the individual stockholders shall be liable to creditors in sums double the amount of the stock by them respectively held," &c. By agreement the issues to be submitted to the jury were:

1st. Was the Bank as well known by the name of the Commercial Bank, as by the name of the President and Directors of the Commercial Bank?

2d. Was the defendant a stockholder at the time the suit was brought; if so, to what amount?

3d. Was the defendant a stockholder at the time of the judgment obtained against the Bank by the plaintiff, and has he transferred his stock?

4th. Was the Bank insolvent at the time the suit was commenced and demand made?

5th. Was the Bank insolvent at the time of the transfer, and was the transfer made with the intent to avoid liability under the charter?

The jury by consent and in accordance with the direction of the Court, passed upon these issues, finding all in favor of the plaintiff and fixing the value of the 15 shares owned by the defendant at $1,500. The issues of law were passed upon by the Court.

The plaintiff proved that the corporation was chartered and organized and operated. That defendant was a stockholder as found by the jury, and found the amount that he deposited with the said Bank, $36,445.38. That the plaintiff sued the corporation and obtained judgment in New Hanover county, at December Term, 1869, for $23,259.89, with interest on $16,545.38 from 13th December, 1869, and for $25.55 costs, with a remittance at same term of $992.72. That the plaintiff issued execution, on which were made $76.05 on 13th May, 1870, $90.67 on the 2d June, 1870, and $41.74 on the 16th February, 1870, and as to the balance of the judgment and execution, the return of the sheriff was *nulla bona*.

After the finding of the jury, the plaintiff asks for judgment for the amount of $3,000, being double the nominal value of the 15 shares of stock owned by the defendant. The Court then heard the other issues raised by the pleadings. The defendant insists that no judgment can be rendered on the finding of the jury for the following reasons:

1st. The liability of the stockholders is secondary only, and if plaintiff's claim against the Bank is extinct, his claim against the stockholder is extinct also.

2d. Plaintiff's claim against the Bank is extinct, because by the 3d section of the charter, (which is produced and proved,) the corporation ceased to exist on the 31st December, 1871.

3d. In reply to plaintiff, who says this is not so, for the reason that the Revised Code, chap. 26, sec. 5, continues the corporation in existence for three years longer, the defendant says this act is not retrospective and does not include corporations like this, which were in existence at the time of its passage.

4th. If it is held to be retrospective and to include this corporation, then it continues the corporation only for the purposes expressly mentioned ; that is, for the purpose of actions against the corporation only, and not for the purpose of actions against the stockholders.

5th. If the corporation is continued for the purpose of keeping alive the debts against the stockholders, then the act is unconstitutional, as impairing the value of the franchise of the corporation by extending the liability of the stockholders for three years, as any limitation which impairs the value of a franchise in the least degree, is unconstitutional.

6th. That if by chap. 26, sec. 5, Revised Code, the corporation is continued for three years only, that they have expired since 31st December, 1871.

7th. That the proof shows that there are other creditors who should be made parties.

8th. That the assets of the Bank should be exhausted before the individual stockholders should be made to answer for the debts of the corporation, and that a reasonable effort should be made by the plaintiff to exhaust the $74,000 in N. C. bonds, with coupons attached, before he calls upon the defendant to answer for the debts of the Bank, it having been in proof that the State bonds issued during the war under an act of the

Legislature prior to 1861, were issued in aid of the W., C. & R. R. R.

9th. That the corporation of the Bank should be made a party.

10th. That there are other solvent stockholders who should be made parties. To this plaintiff replies that the debt of plaintiff having been reduced to judgment against the Bank and a return of *nulla bona* on the execution, then it becomes the debt of the stockholder, George Harris, the defendant.

Upon the questions reserved, the Judge presiding, being of opinion that the plaintiff ought not to recover, entered judgment against the plaintiff for the costs of this action.

From which judgment the plaintiff prayed an appeal.

Appeal granted. Notice of appeal waived.

*W. S. & D. J. Devane* and *R. S. French,* for appellant :

Upon the point, " the individual stockholders shall be liable to *creditors* in sums double the amount of stock by them respectively held in said corporation." Charter of the Commercial Bank 1847–'8, sec. 8.

" In the construction of *all statutes,* the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute, that is to say : 1st. Every word importing the singular number only, may extend and be applied to several persons or things, as well as to one person or thing ; and every word importing the plural number only, may extend and be applied to one person or thing as well as to several persons or things." Rev. Code, chap. 108, sec. 2. We submit that this alters the common law rule of joinder of all parties as plaintiff, where the *contract* is created by statute.

*Battle & Son* and *Strange,* contra, filed the following brief :

The defendants insist that no judgment can be rendered on the finding of the jury, for the following reasons :

1st. The liabilities of the stockholders are secondary only, and if plaintiff's claim against the bank is extinct, his claim against the stockholders is extinct also. *Malloy* v. *Mallett*, 6 Jones Eq., 345 ; *Fox* v. *Hurrah*, 1 Iredell Eq., 358; *Wintry* v. *Webb*, 3 Dev., 27.

2d. Plaintiff's claim against the bank is extinct, because by the third section of the charter, (which is produced and proven,) the corporation ceased to exist on the 31st day of December, 1871.

3d. In reply to plaintiff, who says this is not so, for the reason that the Revised Code, chap. 26, sec. 5, continues the corporation in existence for three years longer, the defendant says this act is not retrospective, and does not include corporations, which were in existence at the time of its passage. 15 Howard, 421 ; 24 Ibid, 242; 9 Ired., 288, *Battle* v. *Speight;* 12 Ired., 21, *Williams* v. *Davis;* Potter's Dwarris, 162 to 166.

4th. If it is held to be retrospective and to include this corporation, then it continues the corporation only for the purposes expressly mentioned. That is, for the purposes of actions against the corporation only, and not for the purposes of actions against the stockholders.

5th. If the corporation is continued for the purpose of keeping alive the debts against the stockholders, then the act is unconstitutional as impairing the obligation of contracts. 1 Kent, 461; 8 Wheaton, 1 ; 11 Iredell, 558.

6th. That if by chapter 26, section 5, of Revised Code, the corporation is continued in existence beyond the term of the charter, it is for three years only, and that has expired.

7th. That the proof shows that there are other creditors who should be made parties.

8th. That the liability of the stockholders is only secondary. That in order to determine the extent of their liability, there must be an account to ascertain the whole debt of the bank and the amount of assets. It may be admitted that the creditors are not compelled to wait for a distribution of the assets,

still the amount of assets which can be subjected in a reasonable time to payment of creditors, must first be ascertained. And the balance of debt, after applying these assets, is the amount for which all the stockholders are liable—not any individual stockholder, to any one creditor.   The charter provides: "The individual stockholders"—not each individual stockholder—" shall be liable to creditors"—not to *a creditor*. So that in case of the insolvency of the bank, all the stockholders, and not a stockholder, shall be liable to creditors, and not a creditor, in sums double the amount of stock by them respectively held.   In other words, upon the ultimate failure of the bank assets to pay all the creditors, a new fund is to be raised out of *all* the stockholders for the joint benefit of all the creditors ; and that each stockholder is bound to contribute to this fund in the same proportion that the number of shares held by him bears to the whole number of shares of stock in the bank.

If one creditor can select any one or more of the solvent stockholders, and obtain satisfaction of his debt out of them, then the whole fund which is to be raised for all the creditors, may be appropriated by one or more creditors, leaving the others without remedy ; and on the other hand, if one stockholder is thus forced to pay the whole debt to one creditor, he will be forced to a suit for contribution against all the other stockholders; if indeed a suit for contribution can be sustained. It is insisted therefore that one creditor cannot sue a single stockholder, that the only remedy is by a creditor's bill, and that all the stockholders must be parties.   Morse on Banking, 439 ; *Pollard* v. *Bailey*, 20 Wall. 520.

The policy of the law requires that as far as practicable, all matters in dispute growing out of the same contract, or liability between the same parties should be settled in one suit.

More particularly is this the practice of the Courts since the adoption of the Code of Civil Procedure.   *Bullard, Adm'r* v. *Johnson & Thomason*, 65 N. C. Rep., 438.   "The pervading idea being to settle controversies by one action, and thereby

prevent the loss of the labor and money expended in that action and the necessity of incurring like labor and expense in a second."

Pearson, C. J. Several interesting questions were discussed on the argument.. We will confine ourselves to one of them, because a decision of that disposes of the case, and we prefer to let the others stand over for further consideration.

We put our decision on the ground that by a proper construction of the clause of the charter of the bank, making the stockholders liable to the creditors of the bank, one creditor cannot maintain an action; but may sue in the name of himself and all of the other creditors, who will become parties to the action and prove their debts, so as to entitle themselves to a part of the fund, in analogy to a bill in equity, by one creditor in behalf of himself and the other creditors, to have an account of the distribution of the assets of the estate; and in analogy to the proceedings in bankruptcy, where all of the creditors are required to prove their debts and have a dividend of the fund; and in analogy to the proceeding of a creditor of a deceased debtor, to have the account taken and payment of debts as provided in the act, "Estates and Administrators," chap. 45, Battle's Revisal. Otherwise to be excluded from all claim on the fund.

The clause is in these words: "In case of insolvency or ultimate inability of the bank to pay, the individual stockholders shall be liable to creditors in sums double the amount of the stock by them respectively held." Whether the stockholders are sureties for each other, so that the solvent stockholders must answer for the insolvent stockholders within the limits of double the amount of stock held by them, or are only bound for a ratio part of the debts of the bank, is a question into which we will not enter. It is adverted to, only to show the distinction between our case and the numerous cases cited on the argument, all of which turn upon the wording of the several charters; and to have it understood that our decision is

upon the meaning of the words used in the charter under consideration.

Assuming the insolvency of the bank, a liability is imposed upon the stockholders, to the creditors of the bank, in sums double the amount of the stock held by them respectively, in order to raise a fund in aid of the assets of the bank, which are supposed to be exhausted for the satisfaction of the creditors of the bank. Double the amount of his stock is the limit of the liability of a stockholder. Whether he is liable to the full amount of double the value of his stock, or will be discharged of his liability by the payment of a less sum, depends upon the amount for which the bank is in default. For instance, if the amount due to depositors and bill holders and other creditors exceeds or equals the sum of double the whole amount of stock, after exhausting the assets of the bank, then the stockholders are liable for the full sum of double the amount of their stock. But if the amount for which the bank is in default to its creditors is short of double the amount of the stock, then the stockholders are not put under obligation to pay double the amount of their stock, but will be discharged on payment of a less sum. For illustration, suppose the default of the bank reaches only the amount of the stock, or only one half of the amount of the stock, then a stockholder, by payment of the amount of his stock, or one half thereof, is discharged of the liability imposed on him by the charter. This is the necessary construction, for a stockholder is not to pay double when one half will pay the debts of the bank. How can it be fixed with judicial certainty whether the bank is in default, in a sum double the amount of the shares held by its stockholders, or in a sum of equal amount, or of one half thereof, so as to enable the Court to enter judgment against any one stockholder? In order to do this, there must be an account taken of the condition of the bank, and the amount of debts left unpaid by its failure, and thus fix the amount for which the stockholders are liable; whether a sum double the

amount of his stock, or its single amount or half, or other less sum.

An account of this kind, taken in an action by one creditor of the Bank against one stockholder, would not be binding upon the other creditors or the other stockholders ; and it is absurd to suppose that the meaning of the charter is, that an account should be taken in the action of every bill holder or depositor against any one stockholder that he may choose to single out. If these innumerable single actions could be maintained at law under the old mode, the stockholders could have invoked the aid of the chancellor to prevent multiplicity of actions, vexation and an unnecessary accumulation of costs, by a bill in equity. Under C. C. P., he is entitled to this relief as a defence to the action. There is another view of the question ; in an action by one creditor against one stockholder, it is impracticable to state an account showing the amount of the debts of the Bank. The amount of deposits may possibly be arrived at by the books of the Bank, so the books may show the amount of notes put in circulation ; but how can it be ascertained what amount of the notes have been lost or destroyed, and for one cause, or another, will never be presented for payment? So it would be impossible to state the account without resorting to the enlarged powers conferred by act of Congress in cases of bankruptcy, and settling the estates of deceased persons conferred by statute, and the enlarged power exercised by the chancellor's " in creditors' bills," by which, after due notice, all creditors who fail to prove their debts, are counted out in the division of the fund. This would fix the amount of the debts of the Bank and the amount of the liability of the stockholders, but the chancellor has no such jurisdiction at the suit of a single creditor, and only exercises it when necessary to avoid multiplicity of actions, costs, &c., at the instance of one who sees for himself and all others of the same class who will come in and make themselves parties.

There is still another view of the question. An action against one of two or more joint *obligors*, might be defeated

at common law by plea in abatement. This is allowed by statute, making joint obligors "joint or several." An action by one of two or more joint *obligors* was fatally defective, and could be defeated by demurrer, if the error appeared on the face of the declaration, or by plea of the general issue and notice to non-suit for the variance.

The charter of the Bank imposes upon the stockholders an obligation to *pay to* the *creditors of the Bank* double the amount of their stock, if the default of the Bank makes so large a fund necessary. So the creditors of the Bank are joint obligees and they must all be parties plaintiff in an action at law, there being no statute which enables them to sue separately, and no provision of the charter to that effect, as in some charters, set out in the authorities cited. The only mode of avoiding this rule is to proceed in equity, in the name of one or more of the creditors, in behalf of all. This mode of proceeding is without a precedent in our Courts; but under the time-honored maxim, "where there is a right there is a remedy," by force of which the equity jurisdiction of the chancellors in England has grown up, to its vast proportions, the Superior Courts, under the present system may well, upon the analogies referred to, allow an action in the name of one or more of the creditors in behalf of themselves and such other creditors, &c. This clause was put in the charter for the purpose of adding to the credit of the Bank. The stockholders have had the benefit of it. The creditors have now in turn a right to hold the stockholders liable to raise a fund out of their individual means in aid of the default of the Bank. The idea that one creditor can "nibble at the fund" and take judgment against one solvent stockholder and then another until his debt is satisfied, leaving the other creditors to shift for themselves after the fund is frittered away, would seem to be out of the question, on any reasonable construction of the clause in the charter, and contrary to all principles of fairness and equity, the purpose being to raise a fund in aid of the assets of the Bank for the benefit of all the creditors.

In reply to the last view, the counsel of plaintiff calls the attention of the Court to Rev. Code, chap. 108, sec. 2. Most of the provisions of that chapter are merely in affirmance of the common law. Section 2, which is relied on, was intended to avoid the very awkward expressions, " such person or persons," " he, she, or they "—himself or themselves "—to be met with in some badly drawn statutes.

No error.

Per Curiam.                                         Judgment affirmed.