## ED CHAMBERS SMITH v. ARTHUR E. DICKS.

(Filed 12 June, 1929.)

1. **Corporations K d—Upon expiration of charter of corporation assets thereof do not escheat.**

    Upon the expiration of the charter of a corporation the directors thereof hold the assets as trustees, first for the creditors, and secondarily for the stockholders in good standing at the time of the expiration of the charter, C. S., 1193, 1194, 1198, and there is no escheat as against the rights of stockholders under the provisions of C. S., 5784.

2. **Same—Stockholders at time of expiration of charter of corporation are entitled to pro rata part of corporate assets.**

    Where an incorporated social club has continued for more than three years after the expiration of its charter to operate as though the charter had not expired, the members or stockholders in good standing at the time of the expiration of the charter are entitled in equity to a pro rata share in the assets of the corporation to the exclusion of members taken in after its expiration, with the right to sell and convey the same, where the rights of creditors are not involved.

3. **Same—Nonresident members of social corporation, excluded from control or ownership of corporate property, are not entitled to share in corporate assets upon dissolution.**

    Where the constitution and by-laws of an incorporated social club clearly provide that its property should be owned and controlled by its resident membership to the exclusion of nonresident members, such nonresident members, taken in at greatly reduced membership dues, are not entitled to share in the assets of the corporation upon the expiration of its charter.

APPEAL by defendant from *Nunn, J.,* at Chambers, 29 April, 1929, of WAKE. Affirmed.

Submission of controversy without action. Agreed case:

"1. The above named, Ed Chambers Smith, is now and was at the times hereinafter mentioned, a citizen and resident of the county of Wake and State of North Carolina.

"2. That the above named, Arthur E. Dicks, is a citizen and resident of the county of Wake, and State of North Carolina.

"3. That on 18 August, 1885, the Capital Club of the city of Raleigh was organized, and incorporated for literary and social purposes, and obtained a charter under the laws of the State of North Carolina, and in pursuance of said purposes maintained a club for its members, governed by a constitution and by-laws adopted by said Capital Club of the city of Raleigh, and that a copy of said charter, constitution and by-laws is hereto attached marked Exhibits A, B and C, respectively. (For a decision of the case it is unnecessary to include the exhibits in this opinion.)

"4. That the said Capital Club of the city of Raleigh was chartered for a period of thirty years from 18 August, 1885.

"5. That on ........ June, 1902, the Capital Club of the city of Raleigh acquired by purchase a certain lot of land in the city of Raleigh, N. C., at the northeast intersection of Martin and Salisbury streets, and erected thereon a club house, said tract or lot of land being more particularly described as follows:

" 'Situate in the city of Raleigh, N. C., and beginning at the southwest corner of Lot No. 115, it being the northeast corner of intersection of Salisbury and Martin streets; running thence north along the east line of Salisbury Street about 70 feet to the southwest corner of the lot formerly owned by B. M. Moore; running thence east parallel with Martin Street about 70 feet to the lot formerly owned by the Coley heirs, and now owned by Mrs. F. P. Tucker; running thence south parallel with Salisbury Street 70 feet to the line of Martin Street; thence west along the north line of Martin Street, about 70 feet, to the beginning, together with all buildings and appurtenances thereto belonging.'

"6. That the charter of the Capital Club of the city of Raleigh expired by limitation on 18 August, 1915, at which time there were 168 resident members of said club and about 40 nonresident members; that the fact of the expiration of the charter was not discovered by the club until sometime in 1922; that in the meantime those who were members of the corporation at the time of the expiration of the charter, being ignorant of the fact that the charter had expired, continued to operate a club in said building, until some time in 1922, when it was discovered that the charter had expired and thereupon, on 7 April, 1922, a charter was obtained from the office of the Secretary of State, incorporating the Capital Club of the city of Raleigh, Inc., the then resident members of the club being the incorporators. That during the time between the expiration of the charter of the old corporation and the

incorporation of the Capital Club of Raleigh, Inc., the old members who operated the club, associated with themselves certain new members by election and between the date of 18 August, 1915, and 18 August, 1918, approximately 30 additional members were so admitted, making the membership 198 resident members on 18 August, 1918. That no conveyance of any interest in the property was made by any old member to any new member.

"7. That no effort was made to wind up the affairs of the corporation within three years from the date of the expiration of the charter, none of its officers and members being aware of the fact that the charter had expired. Those who were members of the corporation continued the operation of the club, and associated new members with them by election just as if the charter had not expired.

"8. That there were no debts of the corporation at the time of the expiration of its charter on 18 August, 1915, or at the end of three years from that date, except current operating expenses and a mortgage indebtedness which is embraced in a deed of trust made on said property by the Capital Club of the city of Raleigh, N. C. That all current operating expenses have been paid.

"9. That sections 6 and 7 of the charter of the Capital Club of the city of Raleigh (the old corporation), which charter was in force up until its expiration in August, 1915, are in words and figures as follows, to wit:

"'(6) The number, qualification, privileges, and method of election of members shall be fixed by the by-laws of the corporation; provided, that no person shall ever be admitted as a member of the corporation except upon the payment of twenty-five dollars ($25.00) as an entrance fee; which entrance fee may be increased or decreased as to persons admitted to membership after the date of incorporation, to such sum as the by-laws may prescribe. Any person may voluntarily cease to be a member of the corporation whenever he sees fit to withdraw therefrom; and any member may be expelled, and may forfeit his membership, under such rules and regulations as may be fixed by the by-laws.

"'(7) No member shall have the right to sell or transfer his membership or his rights or privileges as such, or to substitute another person as a member in his place; and any person ceasing to be a member, whether voluntarily or by expulsion, or by death, shall forfeit all rights and privileges of membership and all rights and claim in and to the property of the corporation, and all his interest in such property shall vest in the corporation absolutely.'

"10. That under and by virtue of the provisions of sections 6 and 7 of the charter set forth in section 12 thereof, article 4 of the Consti-

tution in sections 1, 2 and 3 regulates the status of resident and non-resident members, said sections 1, 2 and 3 being in words and figures as follows, to wit:

" 'Section 1. Members shall be classed as resident, nonresident and honorary.

" 'Sec. 2. Resident members are such as reside or have a place of business in Raleigh Township. They are subject to dues and assessments and have a right to vote and hold office.

" 'Sec. 3. Nonresident members are such as reside out of, and have no place of business in Raleigh Township. They are not subject to assessments and are not entitled to vote or hold office.'

"11. That said sections were in force at the time of the expiration of the charter of the Capital Club of the city of Raleigh.

"Sec. 10A.—Section 2 of Article VI provides 'persons elected non-resident members shall pay annually ten dollars in advance, and shall be exempt from all other dues.

"12. That plaintiff was a resident member of the Capital Club of the city of Raleigh in good standing on 18 August, 1915, and by virtue thereof claims that he is the owner of a 1/168th undivided interest in fee in the property described in section five hereof.

"13. That plaintiff and defendant have entered into a written contract whereby plaintiff has contracted to sell and defendant has contracted to buy at the price of $250 the undivided interest of plaintiff in the lands described in said paragraph 5, provided that interest amounts to a 1/168th undivided interest in fee, as claimed by plaintiff, but defendant now refuses to comply with his contract on the grounds that plaintiff is not the owner of said interest claimed and therefore cannot comply with his contract to convey.

Plaintiff contends: That upon the expiration of the charter on 18 August, 1915, all resident members in good standing immediately became tenants in common of the club real estate and other property, and that he as such member became the owner in fee simple, subject to the then outstanding mortgage of a 1/168th undivided interest therein.

Defendant contends:

"(1) That upon the expiration of the charter of the Capital Club of the city of Raleigh upon 18 August, 1915, the entire property of said club escheated to the University of North Carolina.

"(2) That the persons who became members of the club within three years after the expiration of the charter on 18 August, 1915, have the same rights in the club property as those who were members at the time of the expiration of the charter.

"(3) That the nonresident members who were members of the club in good standing at the date of the expiration of the charter and those who became members of the club within three years after the expiration of the charter are entitled to the same rights in the club property as the resident members.

"(4) That plaintiff is not entitled to a 1/168th undivided interest in fee in said property, subject to outstanding mortgage indebtedness."

The court rendered the following judgment: "This cause coming on to be heard and being heard at Chambers, before his Honor, R. A. Nunn, judge, of the Superior Court, upon the agreed case herein and after hearing the argument of counsel for the plaintiff and defendant, and after consideration of the facts set forth in the agreed case and the exhibits attached thereto: It is ordered, adjudged and decreed:

"1. That upon the expiration of the charter of the Capital Club of the city of Raleigh on 18 August, 1915, the resident members in good standing at that time became tenants in common of the property of said corporation, subject to whatever debts it might owe at the date of the expiration of the charter.

"2. That those persons who became members of the club within three years after the expiration of the said charter have no interest as tenants in common in the property of the Capital Club of the city of Raleigh.

"3. That the nonresident members who were members of the club at the date of the expiration of the charter and those who may have joined since that time have no interest as tenants in common in the property of the Capital Club of the city of Raleigh.

"4. That the plaintiff, Ed Chambers Smith, is seized and possessed of an undivided 1/168th interest in fee in the property of the Capital Club of the city of Raleigh, and has the right to convey said interest in fee, and upon conveyance to the defendant is entitled to recover of the defendant the sum of $250 and the costs of this proceeding."

The defendant excepted and assigned error to the court below signing the judgment, and appealed to the Supreme Court.

*John W. Hinsdale for plaintiff.*
*Paul F. Smith for defendant.*

CLARKSON, J. We think there is no merit in the assignment of error to the court below signing the judgment set forth in the record. The charter of the Capital Club of the city of Raleigh, expired by limitation, on 18 August, 1915. At the time of the expiration of its charter it owned a valuable piece of real estate in the city of Raleigh at the northeast corner of Martin and Salisbury streets, upon which was situated the club building.

SMITH *v.* DICKS.

On 18 August, 1915, there were one hundred and sixty-eight resident members, one of whom was plaintiff, and forty nonresident members in good standing. No effort was made to liquidate and distribute the assets of the corporation within three years from the date of the expiration of its charter, the said corporation continuing to operate under the provisions of its charter, constitution and by-laws, as though its corporate existence had never ceased, until 7 April, 1922, when a new charter was procured.

The plaintiff contends that he became a tenant in common with the other resident members of the corporation in good standing on 18 August, 1915, and that he is the owner in fee simple and had the right to convey to the defendant one one-hundred sixty-eighth (1/168) undivided interest in the said property. The defendant denies the power of the plaintiff to convey the interest claimed.

The defendant contends: (1) That upon the expiration of the charter of the Capital Club of the city of Raleigh upon 18 August, 1915, the entire property of said club escheated to the University of North Carolina. We cannot so hold.

C. S., 1193, is as follows: "All corporations whose charters expire by their own limitation, or are annulled by forfeiture or otherwise, shall continue to be bodies corporate for three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending actions by or against them, and of enabling them gradually to settle and close their concerns, to dispose of their property, and to divide their assets; but not for the purpose of continuing the business for which the corporation was established. In any pending action the court, in its discretion, may extend the time for winding up the affairs of such corporation."

C. S., 1194, in part, is as follows: "On the dissolution in any manner of a corporation, unless otherwise directed by an order of the court, the directors are trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property, and, after paying its debts, *divide any surplus money and other property among the stockholders,"* etc. (Italics ours.)

C. S., 1198, in part, is as follows: "Any surplus funds, after payment of the creditors and costs, expenses and allowances, shall be paid to the preferred stockholders according to their respective shares, and if there still be a surplus, *it shall be divided and paid to the general stockholders proportionately, according to their respective shares."* (Italics ours.)

The statute permitted the corporation to continue as a corporate body for three years for the purpose of prosecuting and defending actions

and to enable the corporation to gradually settle and close up its business, dispose of its property and divide its assets. The business of the corporation ceased on 18 August, 1915. The .assets of the corporation had to be applied first to the payment of debts and the surplus assets to be divided among the stockholders. The fact that the charter had expired was overlooked until 1922. This case does not involve the rights of creditors, it alone concerns the rights of stockholders. It is inconceivable that a court of equity, under the facts and circumstances disclosed by the record, would confiscate the assets of the corporation and permit an escheat.

C. S., 5784, is as follows: "All real estate which has heretofore accrued to the State, or shall hereafter accrue from ·escheats, shall be . vested in the University of North Carolina, and shall be appropriated to the use of that corporation."

In 10 R. C. L. (Escheat), part sec. 6, pp. 607-608, we find the following: "The statute laws of certain states contain provisions prohibiting a corporation from holding real property except for the purposes of its charter, or from holding beyond a prescribed limit or quantity. As a general rule it may be said that the violation of such a prohibition, where no specific penalty is imposed, does not accomplish an escheat of the property to the State. 'There is no question, however, but that a state may validly impose the penalty of escheat for the violation of such a statute. Where this is the case the holding of real estate by a corporation in violation of the statute, while a cause of ground of escheat, does not *ipso facto* effect an escheat; in other words, the title to the property, notwithstanding· the existence of the grounds of escheat, remains in the corporation until an action for escheat is instituted; and it has been ruled that if, before this is done, the corporation bona fide sells and conveys the property to a third person, the latter is vested with an indefeasible title to the land," etc.

In *Wilson v. Leary,* 120 N. C., at p. 93, 94, in speaking· of escheats, it is held: "But whatever the extent of this rule at the common law, if it was the rule at all, it was not founded upon justice and reason, nor could it be approved by experience, and has been repudiated by modern courts. The modern doctrine is, as held by us, that 'upon a dissolution the title to real property does not revert to the original grantors or their heirs, and the personal property does not revert to the original grantors or their heirs, and the personal property does not escheat to the State.' " See *Asheville Division, No. 15 v. Aston,* 92 N. C., 578.

In the *Wilson case, supra,* the case of *Fox v. Horah,* 36 N. C., 358, is overruled. See *Von Glahn v. Harris,* 73 N. C., 323; *Von Glahn v. De-Rosset,* 81 N. C., 467; *Dobson v. Simonton,* 86 N. C., 492; *Smathers v.*

*Bank,* 135 N. C., 410; *Loudermilk v. Butler,* 182 N. C., 502; *Worthington v. Gilmers,* 190 N. C., 128.

In 14A C. J. (Corporations) part sec. 3808(c), p. 1153-1154, the following is said: "In the absence of statute the legal title to property belonging to the corporation passes by operation of law to the stockholders, who are the beneficial owners through the corporation, even where there is a statute providing that the corporation may continue to act thereafter for the purpose of closing up its business, and equity may appoint a receiver or trustee to take possession of the property to pay the debts and turn over the surplus to the stockholders as the beneficial owners of the property." The matter is thoroughly discussed in *Houston v. Utah Lake L. W. & P. Co.,* 47 A. L. R. Anno., p. 1282, At p. 1355, the doctrine that the property of a defunct corporation constitute a trust fund is set forth, known as the "trust fund doctrine": "Its nature and scope are indicated by the following statements: 'When a business corporation, instituted for the purposes of gain or private interest, is dissolved, the modern doctrine is that its property, after payment of its debts, equitably belongs to its stockholders. The dissolution of a corporation cannot deprive its creditors or stockholders of their rights in its property; and, if the common law affords them no adequate remedy, they may obtain relief in equity. Under the modern rule of equity jurisprudence, the severity of the common law in this respect is greatly mitigated, and it is held that it is the franchise, and not the property of the corporation, that is forfeited by a judgment of ouster, and that the property of the corporation is a trust fund for the payment of debts and distribution among stockholders.'" At p. 1498, North Carolina statutes and decisions on the subject are annotated.

In the case of *General Electric Co. v. West Asheville Imp. Co.,* 73 Fed. Rep., *Simonton, Circuit Judge,* at p. 388, says: "The learned counsel who represents the petitioner, in a clear and very forcible argument, contended that no application could be made to the directors for relief, because, in point of fact, there are no directors of the West Asheville Improvement Company, as the repeal of the charter extinguished the life of the corporation and of all of its agencies. But the dissolution of a corporation from any cause does not destroy its property or pay its debts. The franchise of conducting itself as a legal entity, may be, is lost. But the rights of creditors, the obligation of debtors, and the property of the shareholders, remain. And in the absence of statutory regulations, without the necessity for statutory regulations, the courts of equity take hold of and protect these interests."

In *Baldwin v. Johnson,* 95 Texas Rep. (65 S. W., 171), at p. 87-88, it is said: "No debts existed against the corporation, and the com-

missioners appointed under the law of Louisiana were merely for the purpose of collecting the assets and distributing them among the stockholders; but the property itself, upon the dissolution of the corporation, became the property of the stockholders, each one of whom owned an undivided interest in it in the proportion that his stock bore to the whole capital stock. *Arkansas Pass Harbor Co. v. Manning,* 2 Texas Ct. Rep., 881; 94 Texas, 558. In the case cited, *Chief Justice Gaines,* for the Court said: 'But in its last analysis, the stockholders are the beneficial owners of the assets of the corporation. This proceeding is instituted upon the theory, which we think a correct one, that the shareholders are the ultimate owners of the corporate property, and, when the corporation is dissolved and its creditors are satisfied, they hold title to the assets in proportion to their respective shares.' The proposition quoted is well sustained by authority and by sound reasoning. When the corporation existed, the title to the property was vested in it, and if a receiver or some officer had been appointed by the court to wind up the affairs of the corporation, the legal title would have rested in such officer in trust for the creditors and the stockholders. But there being no corporation, no receiver, trustee, nor creditor in existence, the trust ceased to exist and the legal and equitable title united in the stockholders, the only person who had an interest in the land. 2 Perry on Trusts, sec. 920; *How v. Waldron,* 99 Mass., 281."

In 7 R. C. L. (Corporations), part sec. 758, p. 740, it is said: "The common-law doctrine which had its origin in the fact that corporations were originally either municipal or ecclesiastical whose property must either revert or escheat is now practically obsolete in this country either by virtue of statutes or by the equitable doctrine that the assets of a dissolved corporation will be protected in equity as a trust fund for creditors and stockholders."

The defendant contends (2) that the persons who became members of the club within three years after the expiration of the charter on 18 August, 1915, have the same rights in the club property as those who were members at the time of the expiration of the charter. We cannot so hold.

7 R. C. L., sec. 754, in part: "In case of nonstock corporations, the members, while not usually denominated stockholders, are in point of principle stockholders, having an interest in the corporate property similar to that of stockholders in ordinary corporations. And the modern view that the assets of a private corporation are regarded upon its dissolution as a trust fund for the benefit of its creditors and stockholders is held applicable to such nonstock corporations. But it would seem that in the distribution of the assets of such nonstock corporations only

such persons as are deemed members of the corporation at the time of its dissolution would be held to be entitled to share therein," etc.

The defendant contends (3) that the nonresident members who were members of the club in good standing at the date of the expiration of the charter and those who became members of the club within three years after the expiration of the charter are entitled to the same rights in the club property as the resident members. We cannot so hold.

Article 4 of the constitution of the corporation, in sections 1, 2 and 3, regulates and defines the status of resident and nonresident members. These sections are as follows:

"Section 1. Members shall be classed as 'resident,' 'nonresident,' and 'honorary.'

"Sec. 2. Resident members are such as reside or have a place of business in Raleigh Township. They are subject to dues and assessments and have a right to vote and hold office.

"Sec. 3. Nonresident members are such as reside out of and have no place of business in Raleigh Township. They are not subject to assessments and are not entitled to vote or hold office."

The constitution clearly provides that the club should be owned and governed by the resident members and that the nonresident members were merely licensees. They were persons who lived outside of Raleigh Township and only had the right to enjoy the conveniences of the club when visiting. They are expressly denied the right to vote and hold office, and are relieved from the burden of assessments. A nonresident was required to pay dues of $10 per year and exempted from all other dues and assessments. The entrance fee for resident members was $25 and the annual dues were $30.

The defendant contends (4) that plaintiff is not entitled to a 1/168 undivided interest in fee in said property, subject to outstanding mortgage indebtedness. We cannot so hold.

We think from all the facts and circumstances of this particular controversy, and giving a liberal construction to the statutes heretofore quoted, and the inherent equitable power of this Court, that plaintiff is entitled to 1/168 undivided interest in fee simple in said property, and can convey a good fee-simple title to defendant, subject to the outstanding mortgage indebtedness. The judgment below is

Affirmed.