# CIRCUIT COURT OF THE CITY OF WINCHESTER

Harry J. Turner et al.

v.

George S. Yeatras et al.

July 30, 1999

Case No. (Chancery) 99-107

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on July 26, 1999, on a Bill of Complaint for an injunction against the distribution of the assets of the corporation. The Complainants appeared with their counsel, E. Eugene Gunter, Esquire; and Defendants appeared with their counsel H. Edmunds Coleman, III, Esquire. Thereupon, the Court reviewed the parties' respective Findings of Fact and Conclusions of Law and all of the parties' prefiled exhibits were admitted with the exception of Complainants' Exhibits 8 to 10, 13, and 21. Thereupon, arguments of law were made by the parties and upon consideration whereof, the Court has decided that each active member of the club is entitled to one share of the net assets upon distribution, as opposed to the weighted share formula ostensibly approved as the plan of distribution.

## I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

The Fort George Club was formed in 1939 as a nonstock corporation whose primary purpose was to provide its members with a place for the playing of poker games.

As might be expected in a social club dedicated to games of chance, its corporate records were not strictly maintained, and they were all lost, except for those filed as exhibits. While the evidence was in conflict, it appears that

on or about March 19, 1995, the club adopted a new statement of the Articles of Incorporation which provided in pertinent part that:

  a. Membership classifications and membership voting rights were to be as provided for in the Club's By-Laws [Article IV]; and

  b. Indemnification was provided for the Directors and Officers of the Club, such that no Officer or Director would be liable to the Club or its members for any monetary damages in excess of $1.00 [Article VI].

These were duly filed with the State Corporation Commission.

On March 15, 1995, by majority voting, the members of the Board adopted the following by-laws which are pertinent to this resolution:

  A. Establish membership classifications and voting rights as follows:

  Section 1. "Social Member." Persons admitted to membership in the Corporation shall be Social Members for three (3) years following admission. At the end of the three years, Social Members who have paid their dues and met all requirements imposed by the Board of Directors may become Regular Members. Social Members have no vote and may not hold office in the Corporation.

  Section 2. "Voting Regular Member." Members who have played at least fifteen (15) times during the previous calendar year shall be Voting Members. Voting Regular Members may vote and may hold office in the Corporation.

  Section 3. "Non-Voting Regular Members." Members who fail to play at least fifteen (15) times during the previous calendar year shall be Non-Voting Regular Members. Non-Voting Regular Members may not vote and may not hold office in the Corporation. [Article II]; and

  B. Provided that the Board of Directors shall have the power to exercise, on behalf of the Club, "all powers, duties and authority vested in or delegated to [the Club] and not reserved to the membership by other provisions of these By-Laws or the Articles of Incorporation" [Article VII(c)].

In December 1993, the club decided to sell the club property, the property was slow to sell, but the club property was finally sold on September 8, 1998, for $42,000.00.

In January or February of 1999, the club's Board of Directors met to consider how the club funds should be distributed and approved the following plan of distribution:

a. 8 members to each receive 3 shares = 24 shares as follows: Charlie Louizous, John Janzier, George Yeatras, Arthur Nicholson, Lynn Anderson, Milton Driver, John Shanholtz, and Jerry Pultz.

b. 4 members to each receive 2 shares = 8 shares: Donny Boyce, Bobby Yancey, Gene Gunter, and Gerald Jenkins.

c. 4 members to each receive 1 share = 4 shares: John Allowatt, John McCauley, Gene Fishel, and Harry Turner.

The Board's weighted determination was based upon the following considerations:

a. How long a person had been a member of the Club;

b. How active the member was in playing poker which generated income for the Club;

c. Whether the member served on the Board, had been an Officer, or had contributed to the administrative functioning and operation of the Club, for which no Board member or Officer had been compensated; and

d. Whether disciplinary action had ever had to be taken against the member.

At the May 30, 1999, membership meeting, fourteen of the living fifteen members were present (the sixteenth member, Louizous, having died since the date of the sale, and John McCauley was not present); the Board reported its unanimous recommendation to the membership that the Club be dissolved and that the Club distribute the proceeds of the sale to the membership. The first vote taken was ten to one to dissolve the Club and to distribute the proceeds among the members. The Board then made its unanimous recommendation as to the three-shares/two-shares/one-share distribution, and the membership voted nine to two in favor of the Resolution and in favor of the plan of distribution. Certain members, based upon the By-Laws (see above), were not permitted to vote.

Under the plan of distribution as approved by the Board of Directors, the distribution of the net proceeds are not on a *pro rata* basis, but rather are on a weighted basis, and the Complainants are members who are to receive less than that of other members under the weighted plan of distribution. The Complainants maintain that the assets should be distributed on a pro *rata basis*, that is one share for each voting member.

## II. *Conclusions of Law*

A nonstock corporation may have more than one class of members. Virginia Code § 13.1-837.

The Club's restatement of Articles of Incorporation of March 19, 1995, and the By-Laws of like date were promulgated in compliance with the law and are the Articles and By-Laws governing the Court's decision in this case.

Neither the Club's earlier Articles and By-Laws nor the 1995 Articles of Incorporation and By-Laws expressly provided for the manner in which the Club's assets would be distributed to its members upon dissolution of the Club.

The principle dispute in this case is over what share each member is entitled to from the distribution of the Club's assets upon its dissolution. "In the absence of a contrary provision, either in the statute, charter or by-laws, the rights of members of a nonstock corporation are the same as those of the stockholder in an ordinary corporation." *Baird* v. *Tyler*, 185 Va. 601, 606, 39 S.E.2d 642 (1946) (upon dissolution of a nonstock corporation for the shooting of waterfowl, the assets were distributed to the three members on a *pro rata* basis). In deciding *Baird*, the Supreme Court of Virginia relied upon *Smith* v. *Dicks*, 197 N.C. 355, 148 S.E. 464 (1929), where there was a dispute among the members of a social club over the distribution of its assets upon dissolution. The nonresident members of the club claimed that they were entitled to a share upon distribution, and the North Carolina Court held that only the voting resident members were entitled to distribution and accordingly approved distribution of the assets on a *pro rata* basis. That is, each voting member received one share. *See generally* Annotation, *Right to Assets of Voluntarily Dissolved Lodge or Club*, 70 A.L.R. 4th 897 (1989).

In the instant case, there is no statute or by-law providing for the distribution of the assets, so upon approval of the plan of distribution, the rights of the members became fixed according to the law applying to such cases, and the Board of Directors had no authority to create a plan of distribution which provided for distribution other than on a *pro rata* basis. These parties should be familiar with this basic principle, since the Club's House Rules provide that the "Dealer will announce what game is playing before dealing."

As the editors state in 16A *Fletcher Cyc. Corp.* § 8224:

> After payment of creditors, shareholders are entitled to participate in a dissolved corporation's assets in proportion to their respective rights and interest.

The controlling or distributing shareholder has a fiduciary duty to make a *pro rata distribution* of the corporation's assets to its shareholders.

Virginia Code § 13.1-907(A) deals with the distribution of the assets of a nonstock corporation and provides that the net assets "shall be distributed in accordance with the provisions of the Articles of Incorporation or the By-Laws to the extent that the articles of incorporation or by-laws determine the distributive rights of members ... ." In this case, the By-Laws did not address a member's rights upon distribution; therefore, the distribution must be made equally to the sixteen voting members of the Club on a *pro rata* basis, those being the sixteen persons set forth on the Defendant's Findings of Fact, pp. 3-4, not according to the weighted formula ostensibly passed at the May 1999 meeting.

Both sides have filed petitions for an award of attorney's fees and costs. While attorney's fees are not generally recoverable, where counsel have preserved a fund which inures to the benefit of everyone within a class, the litigants may have their fees paid from the common fund. *See Mann v. Bradshaw's Adm'r*, 136 Va. 351, 379, 118 S.E. 326 (1923). Moreover, an impasse had been reached in this case over the dissolution share of the members, so the expenses in this case were also incurred in the process of winding up the corporate affairs and are a post dissolution expense of the corporation.

"In determining whether a party has established a *prima facie* case of reasonableness [of an award of attorney's fees], a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate." *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623, 499 S.E.2d 829, 832 (1998) (*citing Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. Prtnrshp.*, 253 Va. 93, 97, 480 S.E.2d 471, 473 (1997)).

In the case of *McGinnis v. McGinnis*, 1 Va. App. 272, 277-78, 338 S.E.2d 159, 162 (1985), the Supreme Court of Appeals of Virginia held that:

We believe the key to a proper award of counsel fees to be reasonableness under all circumstances revealed by the record. Although evidence of time expended by counsel and the charges

made to the client is a preferred basis upon which a trial court can formulate a reasonable award, *it is not the only basis.*

(Emphasis added.)

In this case, Counsel for the Plaintiffs submitted a petition for a fee and expenses of $5,017.22, and counsel for the Defendants submitted a petition for a fee and expenses of $2,733.00 for representing the corporation, and $435.00 for resenting Yeatras in his individual capacity.

Counsel for the Plaintiffs is awarded a fee and expenses of $2,190.00. Counsel for the Defendants is awarded a fee of $1,900 for representing the corporation and Yeatras as president of the corporation, and a fee of $290.00 for representing George S. Yeatras in his individual capacity. *See* Virginia Code § 13.1-877.